STATE OF MONTANA, Plaintiff and Respondent, v. NOR-BERT PONTHIER, Defendant and Appellant.

No. 10072.

Submitted November 2, 1959. Decided November 30, 1959.

346 Pac. (2d) 974.

See **C. J. S.** Witnesses, § 560.

Berger, Stotesbury & Moe, Peder Moe., Jr., Billings, Peder Moe, Jr., argued orally for appellant.

Forrest H. Anderson, Atty. Gen., Wayne A. Linnell, Asst. Atty Gen., William J. Speare, County Atty., Billings, Wayne A. Linnell, Asst. Atty. Gen., argued orally, for respondent.

THE HONORABLE LESTER H. LOBLE, District Judge, sitting in place of MR. JUSTICE CASTLES.

In an information filed in the district court for Yellowstone County, defendant, Norbert Ponthier, was charged with committing the infamous crime against nature ''by wilfully, unlawfully and feloniously having carnal knowledge of the body of one Lee Everett Schoonover, a male person.''

The action came on regularly for trial on June 8, 1959. The defendant was found guilty and sentenced to a term of fifteen years imprisonment. Defendant's motion for a new trial was denied and he appeals from the order denying that motion and from the judgment of conviction.

The State called six witnesses to prove the charge. The defendant called no witnesses. The State's principal witness was the alleged victim, Lee Everett Schoonover, who testified to defendant's perpetration of the unnatural sex act. The record shows that Schoonover was an inmate of the Yellowstone County jail, occupying a cell with the defendant at the time the alleged offense occurred. Two other inmates in the same cell, Adriel Hedges and Louis Santos, gave testimony which tended to corroborate that of Schoonover. Thus, it will be observed

that the scene of the alleged crime was the "bull pen" of the Yellowstone County jail.

The testimony of the other witnesses need not be embodied in this opinion for a proper understanding of the case or the questions of law involved.

Thê record indicates that when the witness Schoonover was testifying for the State during the first day of the trial, he refused to say whether or not he had shared defendant's bunk on the night of the alleged crime upon inquiry by the prosecutor, but claimed the privilege against self-incrimination. Thereupon, the trial was adjourned.

When the trial resumed the next day, Schoonover was recalled as a State's witness and freely testified that the defendant had perpetrated the act of sodomy.

Defendant's only specification of error, which is deemed to be meritorious, is his claim that the court erred in unduly limiting the cross-examination of the witness Schoonover.

The questions asked Schoonover on cross-examination, and defendant's offers of proof, to which objections were sustained, were undoubtedly presented for the purpose of showing that Schoonover was under detention and awaiting trial under a charge of lewd and lascivious acts upon a child; that he was being prosecuted by the same prosecutor who was proceeding against defendant; that he had not been charged with sodomy, and for the purpose of determining whether or not Schoonover had been offered an inducement to testify against defendant Ponthier, or a threat for his failure to do so, by the prosecutor. Appellant argues that such inquiry is proper as bearing on the credibility of the witness by showing his interest in testifying for the State, if any, and especially pertinent since Schoonover had refused to testify the day before.

On cross-examination counsel for appellant inquired of Schoonover:

"Q. And why were you in the County Jail, Mr. Schoonover?

"Mr. Adams: To which we will object as being irrelevant, and immaterial, and incompetent and improper impeachment.

"Court: Sustained.

"Q. Mr. Schoonover, you testified on direct examination that you were placed in the County Jail and arrested about May 3rd, is that right? A: I was not in the county jail on the 3rd of May.

"Q. Where were you? A. At the City Jail.

"Q. And when did you first arrive at the County Jail? A. The afternoon of May 4, 1959.

"Q. Mr. Schoonover, have you been charged with the offense—

"Mr. Adams: To which we will object as being irrelevant, immaterial, and incompetent, and improper impeachment. Counsel is attempting by the very nature of this question that he has started, to testify in this case.

"Court: Sustained.

"Q. Mr. Schoonover, do you know that Mr. Ponthier has been charged with committing a criminal act of sodomy on you, have you been charged with that offense?

"Mr. Adams: To which we will object and renew it on the same grounds heretofore.

"Court: Sustained.

"Q. Mr. Schoonover, are you acquainted with Gloria Jean Burright?

"Mr. Adams: To which I will object as being beyond the scope of the direct examination, irrelevant, and immaterial.

"Court: Sustained.

"Q. Mr. Schoonover, I want to call your attention to May 3, 1959, and the Fox Theatre here in Billings, and Gloria Jean Burright, and ask you—

"Mr. Adams: To which I will object on the grounds that this line of questioning is incompetent, irrelevant, and immaterial, and improper, and ask that Counsel be asked to discontinue this line of questioning.

"Court: Objection sustained, and without the suggestion of Counsel, I want to warn Counsel for Defendant, that this line of cross-examination is improper and not to continue this same line of cross-examination.

"Mr. Moe: Your Honor, I have an Offer of Proof I would like to make at this time.

*"Defendant's Offer of Proof No. 2,* by Mr. Moe.

"Comes now the Defendant and offers to prove by the witness now on the stand that if he were permitted to testify over objection, he would state that he was charged by an information filed in this Court by this County Attorney with the crime of a lewd and lascivious act upon a minor child of nine years named Gloria Jean Burright, alleged to have been committed about May 3, 1959, in the Fox Theatre in Billings, and that this charge is still pending, and that he was in the County Jail on May 10, as the result of this charge.

"The defendant further offers to prove (by asking the Court to take judicial notice of the foregoing charge filed as Cause No. 5932 in this Court), the fact that this witness is charged with the crime of Sex Deviation, and is presently subject to prosecution by this County Attorney.

"Mr. Adams: We will resist the Offer of Proof on the grounds it is irrelevant and immaterial and incompetent, and improper impeachment testimony. We will refer the Court to Section 93-1901-11 as the basis for our objection.

"Court: The objection is sustained and Offer denied.

"Mr. Moe: Your Honor, I have a further Offer of Proof, and let me write it out now.

*"Defendant's Offer of Proof No. 3,* by Mr. Moe.

"Comes now the Defendant and offers to prove by the witness now on the stand that he has not been charged with the offense for which the Defendant is on trial.

"Mr. Adams: Same objection as heretofore made to the previous offer of proof.

"Court: Objection sustained and the Offer of Proof denied."
Appellant's counsel later proceeded as follows:

"*Defendant's offer of Proof No. 7*, by Mr. Moe.

"Comes now the Defendant, now offers to prove by the witness now on the stand, that some time between the close of the trial yesterday, when the witness claimed the Fifth Amendment in response to certain questions propounded by the County Attorney concerning the offense charged against the Defendant, and today, the witness was contacted by a member of the law enforcement agencies here in the City of Billings, either the Police Department or the Sheriff's Department, at the County Jail, and was induced or it was suggested to him, or he was threatened or promised some benefit if he would change his mind and decline to take the Fifth Amendment, and testify against this Defendant. I intend to ask him the question preliminary to that, Your Honor.

"Court: What is that?

"Mr. Moe: I was going to ask him if at some time between the close of trial yesterday and this morning, he wasn't contacted in his cell or at the County Jail by a member of the Billings Police Department, and if he answered the name of the individual, whose name I do not know, then I would go on and ask him whether this individual did not promise him some benefit or induce him in some way or suggest to him the possibility that he would receive some leniency if he did not take the Fifth Amendment in answer to the County Attorney's questions, and that as a result of this conversation he had decided to change his mind.

"Mr. Adams: We will object to that Offer of Proof, assuming, on the grounds, that it is irrelevant, immaterial, and incompetent, and on the grounds that it constitutes in effect a fishing expedition to see if something might not be elicited regarding such, based upon conjecture, that it constitutes improper impeachment, and it is not substantiated by fact, and the Offer of Proof fails upon its face to specify any person,.

place, or time other than based upon supposition, and therefore it is irrelevant and immaterial and incompetent and improper cross-examination, and constitutes improper impeachment, and there is insufficient evidence in the Offer of Proof to constitute—(whereupon the jury resumed their seats in the courtroom.)

"Court: Court will be in session, and the jury is all present, proceed.

"Q. Mr. Schoonover, at some time following the close of the trial proceedings yesterday and today, did you have a conversation at the County Jail, with a member of the law enforcement agency, concerning certain promises or inducements or threats against you, or concerning you, if you continued to take the Fifth Amendment in response to questions by the County Attorney?

"Mr. Adams: To which I will object on the grounds heretofore read into the record.

"Court: Well now, if you want to ask a question stating specifically what was said, which would be in the way of impeachment, and lay the foundation for impeachment, why that will be permitted. The objection to this question, in the form it is laid, is sustained.

"Mr. Moe: Let the record show the Defendant makes an Offer of Proof previously made and described as Defendant's Offer of Proof No. 7.

"Mr. Adams: May the State [sic] show the State resists on the same grounds heretofore dictated.

"Court: Objection sustained and the Offer of Proof denied."

The questions regarding the following were proper and the witness should have been required to answer:

(1) The reasons for Schoonover's presence in jail (a part of the res gestae); (2) The facts that Schoonover was *not* charged with sodomy; and (3) Threats or inducements by the State.

The State argues that the reasons for Schoonover's presence

in jail, and the fact that he had not been charged with sodomy, are irrelevant and inadmissible. Further, the State argues that the lower court understood counsel's question to Schoonover, posed subsequent to Offer of Proof Number 7, as to whether or not he had a conversation with a member of a law enforcement agency concerning threats, promises or inducements was posed for the purpose of laying a foundation for impeachment by self-contradiction; that objection thereto was properly sustained for lack of particularity as to persons, places, and time; and that a direct and proper question concerning promises, threats or inducements would have been allowed.

It is urged by the State that the defendant was permitted to ask detective Shaffer whether he had offered any inducement to Schoonover to testify. In the first place, the question was not directed to the 8th and 9th day of June, when the defendant was being tried. It will be remembered that on the 8th day of June the witness Schoonover claimed what amounted to the benefits of the Fifth Amendment. He was returned to jail and on the 9th of June the trial proceeded and he abandoned his claim of the Fifth Amendment and testified freely against the defendant. What happened to the witness during this time to change his mind was vital for defendant's counsel to know.

The question to detective Shaffer was related to a matter on or about May 11th and not to June 8th or 9th, the time of the trial. Even if it had been directed to that day, defendant is not limited to questioning only one person about what happened.

The issues, to be resolved here, are these: First, should a defendant in a criminal case be allowed, on cross-examination of a State's witness, to bring out the fact that the witness is being held by the State on the same or a different criminal charge and that he is subject to prosecution by the same prosecutor who is proceeding against the defendant? Second, should the same defendant be allowed to inquire of

the State's witness as to whether promises, inducements or threats have been made to him by the authorities?

Cross-examination into such matters is proper, and the court's refusal to allow such in this case was prejudicial error.

In 3 Wigmore, Evidence, section 967 (3d ed. 1940), it is said:

"It bears against a witness' credibility that he is an *accomplice* in the crime charged and testifies *for the prosecution;* and the *pendency of any indictment* against the witness indicates indirectly a similar possibility of his currying favor by testifying for the State."

In other words, where a state's witness is an accomplice, as is the case here (see State v. Keckonen, 107 Mont. 253, 84 Pac. (2d) 341; State v. Searle, 125 Mont. 467, 239 Pac. (2d) 995), or where a charge is presently pending against him in the same county, as is also the case here, these facts are relevant to show his interest in testifying, and bear on his credibility.

In the case of State v. Ritz, 65 Mont. 180, 211 Pac. 298, 300, this court said:

"Very great latitude indeed ought to be allowed in the cross- examination of an accomplice, and to that end the cross-examiner should be permitted to test his credibility by subjecting him to a most searching inquiry as to any promise of immunity or leniency made him, or any hope or expectation he may entertain of escaping punishment. A less liberal rule would be calculated to place the defendant, to some extent, at least, at the mercy of a witness who may have compelling reasons for desiring his conviction. State v. Geddes [22 Mont. 68, 55 Pac. 919], supra; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686; People v. Hare, 57 Mich. 505, 24 N. W. 843; Gill v. State, 59 Ark. 422, 27 S. W. 598; State v. Ritter, 288 Mo. 381, 231 S. W. 606; People v. Langtree, 64 Cal. 256, 30 Pac. 813; People v. Schmitz, 7 Cal. App. 330, 94 Pac. 407, 419, 15 L.R.A., N.S., 717; People v. McKinney, 267 Ill. 454, 108 N. E. 652; Stevens v. People, 215 Ill. 593, 74 N. E. 786; People v. Moore,

181 N. Y. 524, 73 N. E. 1129; Lee v. State, 21 Ohio St. 151; Tollifson v. People, 49 Colo. 219, 112 Pac. 794; 16 C. J. 694, 695; 40 Cyc. 2511; 2 Wigmore on Evidence, 1097; 1 Wharton's Criminal Evidence, 933; 2 Elliott on Evidence, 185; 3 Ency. of Evidence, 849-955; 5 Jones on Evidence, sec. 828.''

See also State v. Carns, 136 Mont. 126, 345 Pac. (2d) 735, where restriction of cross-examination was held to be error.

The Ritz case, supra, was cited with approval by the United States Supreme Court in Alford v. United States, 282 U. S. 687, 51 S. Ct. 218, 75 L. Ed. 624. There it was said 282 U. S. at page 692, 51 S. Ct. at page 220:

''The present case, after the witness for the prosecution had testified to uncorroborated conversations of the defendant of a damaging character, was a proper one for searching cross-examination. The question, 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed. State v. Pugsley, 75 Iowa 742, 38 N. W. 498; State v. Fong Loon, 29 Idaho 248, 255 ff., 158 Pac. 233, L.R.A. 1916F, 1198; Wallace v. State, supra [41 Fla. 547, 26 So. 713]; Wilbur v. Flood, supra [16 Mich. 40]; 5 Jones, Evidence (2nd Ed.), sec. 2366.

''But counsel for the defense went further, and in the ensuing colloquy with the court urged, as an additional reason why the question should be allowed, not a substitute reason, as the court below assumed, that he was informed that the witness was then in court in custody of the federal authorities, and that that fact could be brought out on cross-examination to show whatever bias or prejudice the witness might have. *The purpose obviously was not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expec-*

*tation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution.* King v. United States, supra [5 Cir., 112 F. 988]; Farkas v. United States, supra [6 Cir., 2 F. (2d) 644], and cases cited; People v. Becker, supra [210 N. Y. 274, 104 N. E. 396]; State v. Ritz, 65 Mont. 180, and cases cited on page 188, 211 Pac. 298; Rex v. Watson, 32 How. St. Tr. 284. *Nor is it material, as the Court of Appeals said, whether the witness was in custody because of his participation in the transactions for which petitioner was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention.* See Farkas v. United States, supra; People v. Dillwood, 4 Cal. Unrep. 973, 39 Pac. 438.'' Emphasis supplied.

If it was not clear in the Ritz case, it should be made clear here, that a defendant is entitled to show, by cross-examination that a State's witness' testimony is affected by fear or favor growing out of his detention by reason of *any* offense.

Recent cases uphold the right of cross-examination to determine whether the witness has bought his peace from the prosecution. See State v. Curcio, 23 N. J. 521, 129 A. (2d) 871; State v. Bailey, 208 Or. 321, 300 Pac. (2d) 975, 301 Pac. (2d) 545; State v. Roberson, 215 N. C. 784, 3 S. E. (2d) 277; Sandroff v. United States, 6 Cir., 1946, 158 F. (2d) 623. Nor can an instruction to the jury as to the credence they should give testimony of an accomplice be an adequate substitute for effective cross-examination. United States v. Hogan, 3 Cir., 1956, 232 F. (2d) 905.

The State's able argument that the district court properly sustained objections to the question posed, following offer of proof number 7 on the ground of improper form for impeachment purposes, does not persuade us. In his offer of proof number 7, counsel for defendant clearly indicated the avenue he wished

to take. And as was said in State v. Curcio, supra [23 N. J. 521, 129 A. (2d) 874]:

"There were too many attempts by counsel to approach this proper avenue of inquiry to indicate that the mere phrasing of the question was improper or insufficient."

Why the district judge mistook the question, as an attempt to lay a foundation for impeachment by self-contradiction, is not apparent. First of all, there is no reason apparent in the record, nor is there any probability indicated, that appellant's counsel intended to impeach Schoonover by showing prior inconsistent statements. On the contrary, by his offer of proof number 7, counsel informed the court that he wanted to bring out any threats or inducements made to Schoonover by the State, if there were any.

The words of Fuld, J., in People v. Savvides, 1 N. Y. (2d) 554, 154 N. Y. S. (2d) 885, 136 N. E. (2d) 853, 855, are appropriate here:

"Convincing though proof of guilt may be, and there can be no denial of its strength in this case, we could here affirm 'only if we were to announce a doctrine that the fundamentals of a fair trial need not be respected if there is proof in the record to persuade us of defendant's guilt.' People v. Mleczko, supra, 298 N. Y. 153, 163, 81 N. E. (2d) 65, 69."

For the reasons stated, the judgment of conviction is reversed and a new trial ordered.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES ADAIR, ANGSTMAN and BOTTOMLY concur.