THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* EL-
ROY MICHAEL BOOKE, DEFENDANT AND APPELLANT.

No. 14098.
Submitted June 15, 1978.
Decided Aug. 21, 1978.
583 P.2d 405.

Loren Tucker, argued, Red Lodge, for defendant and appellant.

Mike Greely, Atty. Gen., Helena, Sheri K. Sprigg, argued, Asst. Atty. Gen., Helena, Arthur W. Ayers, Jr., argued, County Atty., Red Lodge, for plaintiff and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Defendant, Elroy Michael Booke was convicted on two counts of attempted mitigated deliberate homicide by jury verdict in the District Court of Carbon County. He was thereafter sentenced to two terms of forty years each in the state prison at Deer Lodge, Montana. The sentences are to be served consecutively.

During the early morning hours of April 9, 1977, Laurie Guptill and Gary Segmiller were each found unconscious with bullet wounds in their heads near the home of Laurie Guptill, located in rural area south of Rockvale, Montana.

The two victims were found by a group of four friends, which included Laurie Guptill's brother and sister. The group had been drinking and dancing at the Fort Rockvale Bar during the late night hours of April 8, 1977 and the early morning hours of April 9, 1977. The defendant had also been with the group at the Fort Rockvale Bar, but left alone, at approximately 1:10 a.m., April 9, 1977. As the group was leaving the bar to take Laurie Guptill's brother to her house, they observed the defendant driving into the bar's parking lot. Defendant re-entered the bar and spoke to his mother, Mrs. Glen Booke, who was bartending that evening. Mrs. Booke testified that her son was very upset when he returned to the bar, showed her what may have been a gun and stated he had shot Laurie Guptill and her boyfriend in self-defense. Mrs. Booke also testified that defendant and Laurie Guptill had been going out prior to the shooting, but had been doing so less frequently since the end of March, 1977.

On the first day of trial, the county attorney moved to endorse the names of Laurie Guptill and Gary Segmiller as witnesses for the prosecution. The Court granted the motion over defense counsel's objection for lack of written notice. Laurie Guptill testified that she and Segmiller were sitting in her house when she saw the defendant's car approaching. She watched him get out of the car and then she heard two shots. Segmiller went outside while Laurie Guptill went into a bedroom. More shots were fired. Laurie looked out a living room window and saw a person on the ground who was not moving. She went out into the front yard where defendant walked

up to her and said he thought Segmiller was dead. Laurie Guptill testified she told defendant she hated him and the last thing she remembered was the gun going off.

The defendant testified in his own behalf. He said he left the Fort Rockvale Bar at approximately 1:00 a. m. and proceeded to Laurie Guptill's house. His purpose in going there was to obtain a belt he had left there previously. Defendant said he approached the house, knocked on the door and was struck by Segmiller as the door flew open. Knocked down, the defendant pulled a gun from his pants and fired into the front door of the house. He got up, ran back to his car and was attempting to get in when Segmiller ran toward him. As Segmiller came closer, defendant raised the gun and fired. Segmiller was struck by the shot and fell to the ground. Laurie Guptill is said to have come out of the house and started screaming at the defendant. Defendant grabbed her shoulders and shook her in an attempt to calm her. He was turning away to go for assistance when Laurie grabbed his left hand where he still had the gun. The gun discharged and Laurie fell to the ground, with a wound in the head.

The jury returned a guilty verdict of the lesser included offense of attempted mitigated deliberate homicide on both counts. Additional facts relating to specific issues raised on this appeal will be set forth as those issues are considered.

Three issues are presented:

1. Is the criminal attempt statute, section 94-4-103, R.C.M. 1947, unconstitutional?

2. Was the District Court's endorsement of two additional witnesses on the day of trial proper?

3. Should a mistrial have been granted on the grounds that two of the witnesses were subjected to intimidation?

Defendant contends that application of Montana's attempt statute violates due process of law and prevents the accused from being apprised of the nature and cause of the accusations made against him. Section 94-4-103, R.C.M.1947, states:

"Attempt. (1) A person commits the offense when, with the purpose to commit a specific offense, he does any act toward the commission of such offense.

"(2) It shall not be a defense to a charge of attempt that because of a misapprehension of the circumstances it would have been impossible for the accused to commit the offense attempted.

"(3) A person convicted of the offense of attempt shall be punished not to exceed the maximum provided for the offense attempted.

"(4) A person shall not be liable under this section, if under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, he avoided the commission of the offense attempted by abandoning his criminal effort.

"(5) Proof of the completed offense does not bar conviction for the attempt."

It is argued that section 94-4-103 does not include any specific and discernible elements. Attempt is a carry-over from common law and has always included two elements; intent and an act. There is no question that section 94-4-103 contains those elements. A person must have the purpose to commit a specific offense and do an act toward the commission of such offense to be convicted of attempt.

Defendant argues that when the charge of attempt is combined with a specific offense, three or four differing elements of intent may be included, rendering it impossible to translate the accusation. Such is not the case. The prosecutor in this instance framed the information in the language of sections 94-4-103 and 94-5-102. Combined, they contain a total of two elements of intent. Attempt requires a "purpose to commit a specific offense", and deliberate homicide requires "purposely or knowingly" causing the death of another human being. The prosecutor filed two counts, identical in form except for the names of victims, which read:

"The said defendant, at a location approximately four and one-half miles northeast of Joliet, Carbon County, Montana, performed

an act toward the commission of the crime of Deliberate Homicide, with the purpose to commit that offense, by purposely or knowingly shooting one [Laurie Guptill and Gary Segmiller] with a firearm with the purpose to cause the death of said [Laurie Guptill and Gary Segmiller] contrary to the statutes of Montana as specified in sections 94-4-103 and 94-5-102, Revised Codes of Montana, 1947."

It is difficult to imagine that an information stating the alleged facts, using the language of the statutes, and directing defendant to the appropriate sections of the criminal code, can fail to apprise defendant of the nature and cause of the accusation being made. The language in the information was fairly precise. It clearly specified whose life defendant attempted to take.

Defendant contends his actions fall within the specific elements of aggravated assault, section 94-5-202, R.C.M.1947. Therefore, it is argued, prosecutors should not have discretion in determining the charge when a criminal statute exists that is designed for a particular factual situation. First of all, we disagree that section 94-5-202 was necessarily designed for a factual situation such as this. Secondly, when the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion. The alleged conduct may violate more than one statute, but different proof is required under each and absent a clear and manifest legislative intent to the contrary, this Court will not interfere with the prosecutor's discretion. See, *State v. Moore* (1977), 174 Mont. 292, 570 P.2d 580; *State v. Lagerquist* (1968), 152 Mont. 21, 445 P.2d 910; *State v. Evans* (1969), 153 Mont. 303, 456 P.2d 842.

No standing exists for defendant's claim that subsection 3 of the attempt statute, section 94-4-103, is unconstitutional. Subsection 3 provides that a person convicted of the offense of attempt shall be punished not to exceed the maximum provided for the offense attempted. Defendant contends that because the death penalty could have been asked for in this case, where no loss of life occurred, the statute is unconstitutional.

One who is neither injured nor jeopardized by the operation of a

statute cannot challenge its constitutionality. *State ex rel. City of Wolf Point v. McFarland* (1927), 78 Mont. 156, 252 P. 805. A defendant cannot question provisions of an act which do not apply to his case. *State v. Johnson* (1926), 75 Mont. 240, 243 P. 1073. The prosecutor in appellant's case did not ask for the death penalty. The District Court ruled that, as a matter of law, the death penalty was not involved in his case. Defendant has no standing to make the contention.

On the first day of trial, the county attorney moved to endorse the names of Laurie Guptill and Gary Segmiller, the victims of the shooting, as witnesses for the prosecution.

The county attorney stated they were not listed specifically as witnesses in the information because there was substantial doubt at the time the informations were filed that they might live or be capable of testifying. Defendant's counsel acknowledged he and the county attorney had discussed the possibility that Segmiller and Laurie Guptill might be called as witnesses. He nevertheless objected that the notice required by statute for endorsing witnesses had not been given. The District Court granted the motion to endorse and the trial proceeded. Defendant contends the District Court erred and as a result the testimony of the endorsed witnesses was extremely prejudicial to the defendant. Segmiller's failing mental and medical condition and the claimed intimidation of Laurie Guptill is said to have prejudiced the defendant.

Section 95-1803, R.C.M.1947, provides in part:

"Discovery, inspection, and notice. In all criminal cases originally triable in district court the following rules apply:

"(1) For the purpose of notice only and to prevent surprise, the prosecution shall furnish to the defendant and file with the clerk of the court at the time of arraignment a list of the witnesses the prosecution intends to call. The prosecution may, any time after arraignment, add to the list the names of any additional witnesses upon a showing of good cause. The list shall include the names and addresses of the witnesses. This subsection does not apply to rebuttal witnesses."

We considered this provision in *State v. Campbell* (1972), 160 Mont. 111, 500 P.2d 801. The provision was left unchanged by the legislature when section 95-1803 was amended in 1977. Therefore, our reasoning in *Campbell* applies today. We said:

"The addition of John Ereaux's name to the list of witnesses for the State on the first day of trial was contended to be prejudicial. Section 95-1803(a) provides that upon a showing of good cause the list of witnesses filed with the clerk of court may be amended. The Criminal Law Commission comment to this section indicates that this procedure may be done anytime up until a verdict is found. Here there is no showing of abuse of discretion on the part of the trial judge and we will not reverse unless there is such a showing. It was the victim of the crime whose name was being added. It would certainly seem difficult to claim surprise in an assault action to have the person assaulted testify. The record indicates that defense counsel objected but made no effort to ask for a postponement or continuance as permitted by statute at the time when the name was added or when Ereaux testified. Section 95-1708, R.C.M. 1947."

Defendant was not surprised by the endorsement of Segmiller and Laurie Guptill as witnesses. Defendant's counsel stated he had discussed that very matter with the county attorney before trial. The names were set out in the information as victims and the county attorney explained to the District Court his reason for not listing them "specifically" as witnesses. Good cause having been shown, defendant's counsel could have asked for a postponement or continuance. However, the only objection was lack of notice, and as the *Campbell* decision points out, names may be added during trial.

The third issue presented is whether a mistrial should have been declared because of claimed intimidation of two witnesses.

During the course of the trial, the District Court was informed by a sheriff's deputy that two of the witnesses, Laurie Guptill and LeAnn Blackford, were being pressured by their father regarding their testimony. The witnesses were brought into chambers to discuss the matter and there they revealed a fear of their father's vio-

lent temper. Despite their fear, both witnesses said their previous testimony had been the truth. The District Court provided the witnesses with a place to stay and the sheriff's protection for the duration of the trial. Laurie Guptill gave considerable testimony following the in-chambers interview. The circumstances regarding the intimidation claim was subsequently presented to the jury by defendant's counsel through testimony.

The jury is the exclusive judge of a witness' credibility. Section 93-401-4, R.C.M.1947. Although the intimidation of a witness by a third person such as these facts disclosed has not been considered by this Court, an analogy can be drawn from cases involving intimidation by law enforcement authorities. In *State v. Geddes* (1899), 22 Mont. 68, 55 P. 919, we held that no matter how strong the proof was which tended to show an accomplice was threatened or induced to testify, all such facts could only bear upon defendant's credibility and not upon his competency. The decision in *State v. Ponthier* (1959), 136 Mont. 198, 346 P.2d 974, made it clear that a defendant was entitled to show, by cross-examination, that a State's witnesses testimony was affected by fear or favor growing out of his detention by reason of any offense. Finally, in *State v. Braden* (1973), 163 Mont. 124, 515 P.2d 692, we noted, "Traditionally, the testimony of a coerced witness has been admitted on the ground that the coercion goes to the weight and credibility of the testimony, not to its exclusion." 3 Wigmore, Evidence § 815 (Chadbourn rev. 1970), at 289, 290 and cases cited in footnote 3 at p. 290.

In the defendant's case the District Court sufficiently guarded his rights and a mistrial was not warranted. Upon discovering the intimidation by the father of the witnesses the District Court immediately provided protection to eliminate that intimidation. The witnesses were asked if their previous testimony had been the truth and they stated they were fearful, but had told the truth. Defendant's counsel then was able to present the entire matter to the jury so they could weigh the effect of the intimidation on the witnesses and judge their credibility. Laurie Guptill again testified that

despite her fear of her father, she did not tell his story at the trial. The jury is the exclusive judge of a witness' credibility because it is in the best position to make that determination. The jury in this case had all the facts before it to weigh the credibility of the witnesses. We will not interfere with its determination.

For the reasons we have expressed, we find therefore, that defendant was apprised of the nature and cause of the accusations made against him and that defendant is not in a position to challenge the constitutionality of section 94-4-103(3). We find the District Court's endorsement of the two witnesses on the day of trial was proper under the circumstances. Finally, because the jury had all the facts before it was to determine the credibility of the witnesses, we find defendant's motion for a mistrial was properly denied.

Affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and DALY concur.