No. 87-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA

   Plaintiff/Respondent,

 vs.

SCOTT STEPHEN BRUSH,

   Defendant/Appellant,

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
      In and for the County of Custer
      The Honorable Arthur B. Martin, Judge presiding.

COUNSEL OF RECORD:

 For Appellant:

   Joe L. Hegel, Miles City, Montana,

 For Respondent:

   Honorable Mike Greely, Attorney General,
   Clay R. Smith, Assistant Attorney General,
   Helena, Montana,
   Keith D. Haker, Custer County Attorney,
   J. Dennis Corbin, Deputy Custer County Attorney,
   Miles City, Montana.

---

        Submitted on Briefs: July 1, 1987

         Decided: September 1, 1987

Filed: SEP 1 - 1987

       *Ethel M. Harrison*
_____
       Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Scott Stephen Brush, was convicted of sexual assault in District Court, Sixteenth Judicial District, Custer County, following a trial by jury. During the trial, defense counsel made a motion for a mistrial based on testimony introducing other crimes contrary to a pre-trial agreement. This motion was denied as was a similar motion for new trial and/or mistrial made after the jury verdict. Appellant appeals his conviction and the trial court's denial of his motions for mistrial and new trial.

We affirm.

Brush raises three issues on appeal.

1. Did the District Court err in denying defendant's motion for mistrial after police officer testified to other crimes in spite of prior agreement and without the required Just notice?

2. Did the District Court err in denying the defendant's motion for new trial and/or mistrial upon the grounds that the officer's testimony was prejudicial?

3. Did the District Court err by applying the wrong standard for determining whether the defendant was prejudiced by the officer's testimony?

On August 19, 1985, defendant Brush went to Bender Park located on the northeast side of Miles City where he struck up a conversation with a juvenile, J.L.O., age eight, accompanied by her eight month old brother. J.L.O. testified at trial that Brush asked her a lot of questions and then put his arms around her and rubbed her genital area when she bent over to place her brother in his stroller. She ran behind a

building and when Brush did not pursue her, returned to the stroller, put her brother in it, and went to her home across the street. J.L.O. immediately told her mother that there was a man in the park who was asking her a lot of questions. Her mother then went over to the park, wrote down the license number of the defendant's orange van and got a general description of the defendant who was still in the park. She called the police. Officer Newby responded to the call and was approached by two other children at the park, W.B.Z. and R.Z. They described the defendant and told Newby that he had tried to touch both of them in their "private parts." At this time, J.L.O. arrived at the park and told the officer she had been touched in her "private parts" also. The defendant was eventually arrested after his van was identified and stopped at an intersection by other officers who found numerous opened and unopened beer bottles. Defendant admits talking to J.L.O. at the park but denies touching her.

Brush was charged by information under § 45-5-502(1), MCA, on two counts of sexual assault against J.L.O. and W.B.Z. The counts were severed by order on December 20, 1985. This case deals only with count one regarding the offense against J.L.O. Upon learning that the State would call W.B.Z. to the stand as part of their case in chief, defense counsel requested that the State be prevented from asking W.B.Z. questions relating to the charge in the severed second count. The county attorney orally agreed to this before trial.

The controversy in this case surrounds the testimony given by Officer Newby. After relating the description of the defendant given by W.B.Z. and R.Z., the following occurred:

> Q. What other conversation did you have with the youth? A. I asked them basically what the problem was -- you know, did they have any problem with this man. The nature of the call was "bothering", so I then inquired of what was happening.
>
> Q. Did any of the youth explain to you? A. Yes.
>
> Q. Just continue, what occurred? A. Robin stated that the man was -- that he talked very nice and he tried to touch both of them in their private parts.

Defense counsel's objection was sustained and the jury was directed to disregard any testimony concerning any other alleged offense. After the close of the State's case, defendant entered a motion for mistrial which was denied, as was a motion for new trial and/or mistrial made after the verdict came in.

Appellant first contends that the State failed to conform to the procedural requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957. The decision in that case requires that the prosecutor give reasonable notice to the defendant that he intends to introduce evidence of other crimes. Just, 602 P.2d at 963-64. The purpose of this rule is to insure that the defendant is fully informed of what crimes or charges he need defend against so that he will not be taken by surprise at trial. The trial court found that Newby's testimony had been inadvertent. Both the county attorney and defense counsel agreed at trial that Newby's testimony was not a planned part of the State's case. Indeed, the county attorney had fully instructed Newby regarding such testimony in accordance with the pre-trial agreement. We fail to see how Just applies to a case where the county attorney never intended to introduce evidence of defendant's other crimes and where the testimony was an unintentional response to a non-suggestive question as

- 4 -

occurred here. Therefore, we conclude that no Just notice was required under these circumstances.

Appellant next contends that the introduction of Newby's testimony was of "such an inflammatory nature" that the cautionary instructions given by the court "only served to reinforce the prejudicial effect in the minds of the jurors." The standard for establishing prejudice is whether a substantial right was denied. Section 46-20-701, MCA; State v. Gray (Mont. 1983), 673 P.2d 1262, 1266, 40 St.Rep. 2023, 2027; State v. Wells (1983), 202 Mont. 337, 349, 658 P.2d 381, 388. Only if there was a reasonable possibility that the inadmissible evidence might have contributed to the conviction is there reversible error. State v. Howell (Mont. 1987), 734 P.2d 214, 217, 44 St.Rep. 542, 546; Gray, 673 P.2d at 1266; Wells, 658 P.2d at 388; State v. LaVe (1977), 174 Mont. 401, 571 P.2d 97.

Here, Officer Newby's testimony was not purposely drawn out by the county attorney. Defense counsel agreed that it was an inadvertent slip. The testimony was neither graphic nor detailed and the county attorney made no effort to corroborate it. In addition, J.L.O.'s testimony was found by the trial court to be consistent with corroborating testimony and truthful. Under the above circumstances we find that even if there was error it was rendered harmless by the trial court's cautionary instructions to the jury.

The general rule is that where the trial judge withdraws or strikes improper testimony from the record with an accompanying cautionary instruction to the jury any error committed by its introduction is presumed cured. State v. Smith (Mont. 1986), 715 P.2d 1301, 1308, 43 St.Rep. 449, 456; State v. Gray (Mont. 1983), 673 P.2d 1262, 1266, 40 St.Rep. 2023, 2027; State v. Freeman (1979), 183 Mont. 334, 345, 599 P.2d 368, 374. As we discussed in Freeman, the jury cannot

be presumed to ignore their duties to respect the instructions of the court and to decide a case based only upon the evidence admitted. Freeman, 599 P.2d at 374-75. See also State v. Armstrong (1980), 189 Mont. 407, 428, 616 P.2d 341, 353. The trial court gave three cautionary instructions admonishing the jury to disregard Officer Newby's comment. One was given immediately after defense counsel's objection. Another was given at the end of county attorney's redirect examination of Newby and a third was given in jury instruction no. 14 as follows:

INSTRUCTION NO. 14

Testimony has been given by Officer Newby that during his initial investigation that he was told by two children that the defendant had touched them. You are instructed to erase this testimony from your minds and not allow it to influence you in any manner in determining if the defendant is guilty or not guilty of the offense of sexual assault against a child, [J.L.O.].

Appellant argues that these repeated instructions only served to firmly fix Newby's remark in the minds of the jurors. This argument is without merit. Evidence of other crimes is often admitted by courts for limited purposes with a corresponding cautionary instruction to the jury. This practice has been expressly approved and provided for by this Court in Just. Just, 602 P.2d at 964. To recognize that juries can hear of other offenses and use proper restraint in considering them only for a particular purpose but cannot ignore them completely when told to do so is illogical and inconsistent.

This case is very similar to the case of State v. Straight (1959), 136 Mont. 255, 347 P.2d 482, where the prosecuting attorney referred to the defendant's beating of "children" instead of the single child who was the subject of

the assault charge. This Court held that any error resulting from this remark was promptly cured by the judge's admonishment to the jury to disregard the statement. Straight, 347 P.2d at 487. A similar result was demanded in State v. Liddell (Mont. 1984), 685 P.2d 918, 41 St.Rep. 1293, where a rape victim "blurted out," in departure from the established time sequence of her testimony, that the defendant had smoked a marijuana cigarette prior to the act charged. The State did not pursue this and we held that the evidence was made harmless by the trial court's cautionary instruction. Liddell, 685 P.2d at 925. Accordingly we hold that any error caused by Newby's inadmissible testimony was cured by proper admonishment of the jury.

The third contention of appellant is that the trial court used the wrong standard in denying the defendant's motions for mistrial and motion for new trial. We do not agree.

As stated above the standard for determining reversible error is whether there was a reasonable possibility that the inadmissible evidence might have contributed to the conviction. Gray, 673 P.2d at 1266. The trial judge noted in his order of November 10, 1986 that he found J.L.O.'s testimony credible and consistent with corroborating testimony and that he was satisfied that the jury convicted only on the admitted evidence. Our role as an appellate court is to determine whether as a matter of law the trial court abused its discretion in denying a mistrial under these circumstances. State v. Close (Mont. 1981), 623 P.2d 940, 946, 38 St.Rep. 177, 183. To declare a mistrial there must be a manifest necessity to do so or the ends of public justice would be defeated. State v. Smith (Mont. 1986), 715 P.2d 1301, 1308, 43 St.Rep. 449, 456; Close, 623 P.2d at 946. Similarly, to grant a new trial, the defendant must have been

deprived of a fair and impartial trial or it is clearly within the interest of justice. See Gray, 673 P.2d at 1265-66; State v. Rose (1980), 187 Mont. 74, 83, 608 P.2d 1074, 1079. Because the trial court is in the best position to observe the jurors and determine the effect of questionable testimony it is given a latitude of discretion in its rulings on prejudicial evidence. See Gray, 673 P.2d at 1266 and cases cited therein.

This is not a case of prosecutorial misconduct which often forms the basis for a new trial. See Gray, 673 P.2d at 1265-66. As stated earlier no prejudicial error was shown. Officer Newby's inadvertent statement was not graphic nor detailed and was not elaborated upon. Any prejudicial effect it may have had was promptly cured by the court's cautionary instructions to the jury. The trial judge did not abuse his discretion in denying the defendant's motions for mistrial and new trial.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices