No. 97-387

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 328

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JUAN JOSE FLORES,

Defendant and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J.G. Shockley, Attorney at Law; Victor, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

George H. Corn, Ravalli County Attorney; Hamilton, Montana

Submitted on Briefs: August 20, 1998

Decided: December 30, 1998

Filed:

No

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1. On June 28, 1996, Juan Jose Flores was charged by information in the Twenty-First Judicial District Court in Ravalli County with aggravated assault in violation of § 45-5-202(1), MCA. On December 18, 1996, a jury found Flores guilty of aggravated assault. On April 11, 1997, Flores filed a notice of appeal. We affirm the judgment of the District Court.**

**¶2. The issues presented on appeal are as follows:**

**¶3. 1. Did the District Court err when it denied Flores' motion for a mistrial after the State arrested a defense witness in the presence of the jury?**

**¶4. 2. Did the District Court err when it allowed the State to introduce photographs of the victim's wounds?**

**¶5. 3. Did the District Court err when it limited Flores' impeachment of Milton Harshbarger?**

**¶6. 4. Did the District Court err when it denied Flores' request to treat Milton Harshbarger as a hostile witness?**

**¶7. 5. Did the District Court err when it denied Flores' instruction on the lesser included offense of misdemeanor assault?**

**¶8. 6. Does the doctrine of double jeopardy bar further prosecution in this case?**

FACTUAL BACKGROUND

**¶9. On June 12, 1996, outside a bar near Hamilton, Juan Flores cut Mike Rosling's forearm with a knife. Rosling was required to undergo surgery and extensive physical**

therapy, and can no longer work at his occupation because of his injuries. At trial, Flores claimed that he cut Rosling in self-defense because Rosling approached him while swinging a belt with a buckle. Rosling claimed that Flores attacked him as Rosling was backing away from Flores with his arm above his head for protection from Flores' knife.

## ISSUE 1

¶10. Did the District Court err when it denied Flores' motion for a mistrial after the State arrested a defense witness in the presence of the jury?

¶11. When considering whether to grant or deny a mistrial we have held that the trial court must consider whether the defendant has been denied a fair and impartial trial. *See State v. Partin* (1997), 287 Mont. 12, 15, 951 P.2d 1002, 1005. A mistrial is considered an extreme remedy, only to be granted for manifest necessity as required by the ends of justice. *See State v. Brush* (1987), 228 Mont. 247, 252-53, 741 P.2d 1333, 1336. Consequently, trial judges are encouraged to consider alternatives to a mistrial, such as cautionary instructions. *See State v. Moran* (1988), 231 Mont. 387, 391, 753 P.2d 333, 336, *cert. denied* (1988), 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed. 2d 52.

¶12. On appeal, we review the trial court's decision for an abuse of discretion. *See Moran* 231 Mont. at 389, 753 P.2d at 336. If the trial judge acted rationally and responsibly, we will affirm his or her decision. *See Moran*, 231 Mont. at 389, 753 P.2d at 335.

¶13. Robert Fix testified as a defense witness at Flores' trial. At the close of Fix's testimony, he was arrested by the courtroom bailiff on an outstanding warrant for nonappearance in a DUI case. The arrest occurred in open court and in the presence of the jury. Flores requested that the District Court admonish the State and inform the jurors that they should disregard the incident. The District Court admonished the jurors as follows:

Ladies and gentlemen, as you saw, Mr. Fix was taken into custody by the sheriff's office in connection with an unrelated matter. You are not to let that interfere with the evaluation of his testimony. That has nothing to do with his testimony today, and you're not to consider it in evaluating whether or not you find his testimony to be credible.

¶14. Flores then moved for a mistrial, which the District Court denied. During the settling of jury instructions, Flores renewed his request for a mistrial. The District Court observed that although it would have been preferable for the arrest to have taken place outside the presence of the jury, what occurred was not "so shocking as to override the jury's judgment." The District Court attributed the incident to the bailiff's inexperience and denied Flores' renewed request for a mistrial.

¶15. In his closing argument, defense counsel admitted that "Mr. Fix was not the most credible witness in the world."

¶16. On appeal, Flores insists that the State knew what was about to happen before it transpired. This is the same argument Flores presented to the District Court. The District Court rejected Flores' assertion that the State had prior knowledge and should be held responsible for Fix's arrest in the jury's presence.

¶17. Because a mistrial is an exceptional remedy, something short of a mistrial is preferred unless the ends of justice require otherwise. We have held that a trial court's denial of a motion for mistrial is entitled to deference on appeal and should not be second guessed by this Court. *See State v. Walker* (1996), 280 Mont. 346, 352, 930 P.2d 60, 63-64; *Brush*, 228 Mont. at 252-53, 741 P.2d at 1338. We conclude that Flores has not established a reason why the District Court's cautionary instruction to the jury did not serve the ends of justice in light of the particular facts of this case. Certainly, the arrest of a witness in front of a jury is a practice that we condemn; however, as the State indicates, the prejudice as a result of this ill-timed arrest does not rise to the level necessary to justify a mistrial.

¶18. Accordingly, we conclude that the District Court did not abuse its discretion when it denied Flores' motion for a mistrial based upon Fix's in-court arrest.

ISSUE 2

¶19. Did the District Court err when it allowed the State to introduce photographs of the victim's wounds?

¶20. The admissibility of evidence is within the sound discretion of the trial court. *See State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The trial court

must consider the relevance of the photographic evidence, and whether its probative value outweighs its prejudicial effect. *See State v. McKeon* (1997), 282 Mont. 397, 404, 938 P.2d 643, 647. We have recognized that photographs are not inadmissible simply because they are gruesome or depict the brutality and viciousness of the crime. *See Gollehon*, 262 Mont. at 302, 864 P.2d at 1263.

¶21. Flores appeals the District Court's admission into evidence of four photographs of Rosling's injury which were taken immediately following his altercation with Flores. The photographs are graphic and depict a large gash wound that exposes tissue, muscle, and bone. Flores contends, pursuant to Rule 403, M.R.Evid., that the only utility of the photographs was to inflame the passions of the jury and that any probative value of the photographs was outweighed by their prejudicial effect. Flores maintains that if there was any need for the State to show the jury the location of Rosling's wound, the scars on his forearm would have sufficed. Flores suggests that there is a reasonable possibility that the photographs helped convict him.

¶22. We agree with the District Court and the State that these photographs, as gruesome as they appear, were properly admitted because they were essential to the jury's understanding of the case. Flores testified that he cut Rosling in self-defense while Rosling was approaching him with his arm raised and while swinging a belt with a buckle. Rosling, on the other hand, testified that Flores attacked him with a knife while he was backing away from Flores with his arm above his head for protection. Thus, the photographs were relevant to both the State and the defense to show the position of Rosling's arm at the moment when he was cut.

¶23. The photographs also helped provide the jurors with an understanding of the nature and extent of the injury so that if they were convinced that Flores acted in self-defense, they could determine whether Flores exercised reasonable force.

¶24. Finally, the photographs aided the jury in its determination of whether the State had proven the "serious bodily injury" element of aggravated assault. Flores maintains that he stipulated to the serious nature of the injury so that the photographs would not be shown to the jury. However, Flores contradicted himself when he requested at trial that the District Court instruct the jury on the lesser included offense of assault which does not include the element of "serious bodily injury."

¶25. For these reasons, we conclude that the photographs were relevant and their probative value outweighed any prejudicial effect they may have had. Accordingly, we affirm the judgment of the District Court.

ISSUE 3

¶26. Did the District Court err when it limited the impeachment of Milton Harshbarger?

¶27. The standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion. *See State v. Sullivan* (1994), 266 Mont. 313, 324, 880 P.2d 829, 836. *See also State v. Mergenthaler* (1994), 263 Mont. 198, 204, 868 P.2d 560, 563; *State v. Later* (1993), 260 Mont. 363, 364, 860 P.2d 135, 136.

¶28. During trial, Flores proposed that he be allowed to question defense witness Milton Harshbarger about a pending assault charge involving Harshbarger's ex-wife. Flores maintained that Harshbarger had a motive to testify favorably for the State because his misdemeanor assault charge could be elevated to a felony since his ex-wife suffered a broken nose in the assault. Flores argues that the District Court erroneously restricted his cross-examination of Harshbarger by not allowing extensive examination regarding the pending assault charge.

¶29. The District Court expressed concern about Harshbarger's ability to answer questions which called for legal conclusions, such as when a misdemeanor could be elevated to a felony, and the possibility that such questions may confuse the issues. Rather than allowing Flores to ask Harshbarger to give legal conclusions, the District Court ruled that Flores could question Harshbarger regarding whether he had a criminal charge pending before the court, "as long as we do not get into . . . his knowledge of felonies and misdemeanors," and then form any arguments regarding Harshbarger's testimonial bias toward the State in his closing remarks. Flores questioned Harshbarger about the pending criminal charge, but never argued how it might relate to testimonial bias in his summation.

¶30. We have permitted cross-examination on threats or inducements by the State, the failure to charge the witness with a crime, and the reason for the witness's presence in jail, *see State v. Ponthier* (1959), 136 Mont. 198, 346 P.2d 974; on claimed intimidation of witnesses, *see State v. Booke* (1978), 178 Mont. 225, 583 P.2d 405; and

on threats and assaults to the witness by a party, *see Cissel v. Western Plumbing and Heating, Inc.* (1980), 188 Mont. 149, 612 P.2d 206. *See State v. Short* (1985), 217 Mont. 62, 67, 702 P.2d 979, 982.

¶31. In *Ponthier*, 136 Mont. at 208, 346 P.2d at 979, we held that:

Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross[-]examination that his testimony was affected by fear or favor growing out of his detention. . . . If it was not clear in the *Ritz* case, it should be made clear here, that a defendant is entitled to show, by cross-examination that a State's witness' testimony is affected by fear or favor growing out of his detention by reason of any offense.

More recently, in *Short*, the trial court limited the defendant's right to cross-examine his co-actor, but did allow evidence that the witness had charges pending against him for stealing the defendant's property in another state. We held that the "cross-examination brought out all the information necessary to argue the credibility, motive and bias of this witness to the jury." *Short*, 217 Mont. at 68, 702 P.2d at 982.

¶32. Based on our review of the record in this case, and our application of relevant case law, we conclude that the District Court granted Flores adequate freedom to impeach Harshbarger and that it was Flores himself who did not take full advantage of the District Court's ruling. Flores was free to make the points he wanted to make by questioning Harshbarger about the pending charge, and then arguing in summation that Harshbarger was less than a reliable witness. The District Court's ruling allowed a cross-examination that would have brought out all the information necessary to argue the credibility, motive, and bias of Harshbarger to the jury. We therefore reject Flores' allegation of error regarding the District Court's limitation on his freedom to impeach Harshbarger, and conclude that the District Court did not abuse its discretion.

ISSUE 4

¶33. Did the District Court err when it denied Flores' request to treat Milton Harshbarger as a hostile witness?

¶34. Flores asserts that the District Court abused its discretion when it refused to allow him to treat Milton Harshbarger as a hostile witness for purposes of asking leading questions even though Harshbarger was listed on the information as one of the State's witnesses and was a close friend of the victim. Flores maintains that the District Court's ruling prejudiced his ability to effectively elicit testimony in support of his theory of self-defense.

¶35. As stated above, the standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion. *See State v. Sullivan* (1994), 266 Mont. 313, 324, 880 P.2d 829, 836.

¶36. Flores used leading questions throughout Harshbarger's direct examination to elicit facts regarding the crime itself. It was not until Flores began to examine Harshbarger regarding subsequent statements he made to the police that the State objected to Flores leading the witness. The District Court ruled that Harshbarger had not yet been shown to be "hostile" or uncooperative, and indicated that he would sustain any further objections to leading questions. The next time the State objected, Flores was permitted to rephrase his question and continue with his examination.

¶37. Although the District Court did not characterize Harshbarger as a hostile witness in relation to Flores and, therefore, did not allow Flores to use leading questions, the District Court refused to allow Flores to use a police report to refresh the witness's recollection as if he were a "friendly" witness. Despite this obviously conflicting characterization of the witness, Flores has failed to show how the District Court's rulings substantially interfered with his ability to present his theory of self-defense. Section 46-20-701(1), MCA, provides that "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial."

¶38. We conclude that despite the District Court's ruling with regard to the manner in which Flores was allowed to question Harshbarger, Flores was still able to effectively present his theory of self-defense. Flores was allowed to use leading questions throughout Harshbarger's direct examination to elicit facts regarding the crime itself. Because the error in this instance was not prejudicial, we conclude that the District Court did not abuse its discretion.

ISSUE 5

**¶39. Did the District Court err when it denied Flores' instruction on the lesser included offense of misdemeanor assault?**

**¶40. As stated above, the standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion.** *See Sullivan*, **266 Mont. at 324, 880 P.2d at 836.**

**¶41. Flores was charged with aggravated assault pursuant to § 45-5-202, MCA, which states:**

(1) A person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another.

(2) A person commits the offense of felony assault if the person purposely or knowingly causes:

(a) bodily injury to another with a weapon; or

(b) reasonable apprehension of serious bodily injury in another by use of a weapon.

**¶42. At trial, Flores requested an instruction on misdemeanor assault as a lesser included offense of aggravated assault. Misdemeanor assault is defined in § 45-5-201 (1), MCA:**

A person commits the offense of assault if he:

(a) purposely or knowingly causes bodily injury to another;

(b) negligently causes bodily injury to another with a weapon;

(c) purposely or knowingly makes physical contact of an insulting or provoking nature with any individual; or

(d) purposely or knowingly causes reasonable apprehension of bodily injury in another.

¶43. Flores contends that the jury could find that he inflicted only "bodily injury," which is required for misdemeanor assault, rather than "serious bodily injury," which is required for aggravated assault. *See* §§ 45-5-201 and -202(1), MCA. Alternatively, Flores argues that the jury could find that he only caused "reasonable apprehension of bodily injury," which is another basis for a misdemeanor assault conviction, when he was threatening the victim and his friends outside the bar, but still believe that when the victim approached Flores while swinging his belt over his head, Flores was acting in self-defense.

¶44. The District Court declined the instruction because it concluded that there was no evidence to support such an instruction. We have held that before a criminal defendant is entitled to a jury instruction on a lesser included offense, he or she must show any evidence in the record from which the jury could rationally find him or her guilty of the lesser offense and acquit him or her of the greater. *See* § 46-16-607(2), MCA; *State v. Castle* (1997), 285 Mont. 363, 367, 948 P.2d 688, 690.

¶45. We conclude that Flores' first theory, that the jury could have found that he inflicted only "bodily injury" and, thus, the instruction was required, fails to satisfy the requirement set forth in *Castle* and § 46-16-607(2), MCA. The definition of "serious bodily injury" which is required for a conviction of aggravated assault, is bodily injury that "creates a substantial risk of death" or "causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ." Section 45-2-101(64), MCA. "Bodily injury," as required for misdemeanor assault, means "physical pain, illness, or any impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA.

¶46. The evidence at trial clearly establishes that Rosling suffered a serious bodily injury. The photographs taken of Rosling immediately following the knifing show a wide, deep, gouge-wound to Rosling's right forearm which exposes torn muscle, tissue, and bone. The injury precludes Rosling from working in the occupation in which he worked prior to the injury. Rosling had to undergo physical therapy to develop mobility and range of motion in his right hand and, at the time of trial, Rosling still could not make a closed fist. Moreover, Flores stipulated to the severity of Rosling's injury. Thus, the evidence clearly demonstrates that Rosling suffered more than "pain" or "impairment" or "reasonable apprehension of bodily injury." Rather, Rosling suffered permanent disfigurement and protracted loss of function of

his right hand.

¶47. We conclude that the District Court was correct to refuse to instruct the jury on misdemeanor assault as a lesser included offense of aggravated assault because the injuries in this case clearly required an instruction on the greater offense and provided no evidence that merely a misdemeanor assault was committed.

¶48. With regard to Flores' claim that an instruction on the lesser included offense of misdemeanor assault would have bolstered his theory of self-defense, we agree with the District Court that Flores' theory was sufficiently bolstered by the jury instructions regarding self-defense. Flores need not ensure that the jurors are instructed on how to convict him of a separate crime in order for them to conclude that he acted in self-defense.

¶49. Therefore, we conclude that the District Court did not abuse its discretion when it refused to instruct the jury on misdemeanor assault as a lesser included offense of aggravated assault.

ISSUE 6

¶50. Does the doctrine of double jeopardy bar further prosecution in this case?

¶51. Flores maintains that this Court should not allow a retrial of this case on remand because the State, through its intentional misconduct, successfully induced Flores to move for a mistrial, which was denied. Flores claims that double jeopardy attaches when a mistrial should have been granted by the District Court, but was not. He further argues that the Montana Constitution guarantees Montana citizens a fair trial and that if the State intentionally denies a citizen that right, the citizen should not have to face a second trial that the State is then better prepared to win.

¶52. The standard of review of a district court s ruling on a motion for mistrial in a criminal case is whether there is clear and convincing evidence that the court s ruling is erroneous. *See State v. Greytack* (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098. This Court has held that a mistrial is appropriate only when there is a demonstration of manifest necessity or when the defendant has been denied a fair and impartial trial. *See State v. Partin* (1997), 287 Mont. 12, 15, 951 P.2d 1002, 1005.

¶53. The intentional misconduct Flores claims the State committed in order to deprive him of a fair trial is as follows: (1) the arrest of Fix, a defense witness, in the presence of the jury; (2) the State's introduction of photographs of Rosling's injury; (3) the State's unsuccessful attempt to introduce the impeachment testimony of Sergeant Bruce Hennell after the State and Flores agreed that Hennell would not testify; (4) the intimidation that Robert Lambert, Robert Fix, and Milton Harshbarger may have felt from the State when they agreed to testify; (5) the State's failure to charge Rosling with assault, even though Rosling admitted that he threw a beer bottle at Flores during the altercation; (6) the State's failure to investigate a threat allegedly made by Harshbarger to two defense witnesses prior to trial; and (7) the State's questioning of Flores about whether he received public assistance.

¶54. Flores claims that the intentional misconduct of the State was enough to cause a mistrial. Any retrial of the case, he contends, should then be barred by the doctrine of double jeopardy. Flores maintains that because he unsuccessfully moved for a mistrial, when one should have been granted, double jeopardy should have the same effect of barring a retrial if this case is remanded.

¶55. We discussed above the arrest of Fix in the presence of the jury, as well as the introduction of the photographs of Rosling's injury. In both instances, we concluded that these alleged errors did not deprive Flores of a fair trial and we affirmed the judgment of the District Court.

¶56. With regard to the State's attempt to introduce impeachment testimony of Hennell after the State and Flores had agreed that the State would not introduce him as a witness, we conclude that because the State did not successfully call the officer to the stand to testify, Flores suffered no prejudice from the State's unsuccessful attempt.

¶57. Flores' allegation that the State indirectly intimidated those witnesses who had criminal matters pending before the court also does not rise to the level of denying Flores his right to a fair trial. Flores contends that because Milton Harshbarger, Robert Lambert, and Robert Fix had an interest in protecting themselves from further prosecution in their own pending criminal cases, the State was able to indirectly exert enough control over them to cause them to testify favorably for the State and against Flores. The facts of this case indicate otherwise. Prior to trial, Flores raised these concerns to the District Court in chambers. Specifically, with

regard to Robert Lambert, who was a bystander at the bar where the altercation took place, the District Court concluded that if Lambert insisted on

testimonial immunity he would receive it. When the District Court asked Flores if he had similar concerns regarding other witnesses who might need immunity, Flores specifically said that no witness other than Lambert would need testimonial immunity, including Fix and Harshbarger. Moreover, as discussed above, the District Court permitted Flores to question Harshbarger about his pending criminal charge and argue any inferences regarding Harshbarger's testimonial bias as a result of that charge. For these reasons, we conclude that this alleged error did not deny Flores a fair trial.

¶58. Flores' claim that he was denied a fair trial because Rosling was not charged with assault for throwing a beer bottle at him during the altercation is equally as inconsequential to Flores' right to a fair trial. At trial, Harshbarger testified that he saw Rosling throw a beer bottle at Flores in order to keep Flores at a distance. Rosling himself stated that "[w]hen Flores first burst out of the [bar] with the knife in his hand, I said back off, and I threw the beer bottle." In whatever manner the State chose to address Rosling's actions during the altercation with Flores, whether the State concluded that he assaulted Flores or was acting in self-defense, we conclude that it had little bearing on the fairness of Flores' trial. Flores was free to explain his theory of the State's bias against him in his summation. As for his ability to present his defense of self-defense, we conclude that the State did not impede Flores by not charging Rosling with misdemeanor assault.

¶59. Likewise, with regard to Flores' complaint that the State did nothing to investigate Harshbarger's threat to Fix and another witness prior to trial, we conclude that because Flores

was able to question several witnesses about this matter and present his theory of bias in his closing remarks, Flores was not denied a fair trial.

¶60. Finally, with regard to the State's question to Flores regarding whether he receives public assistance, we agree with the District Court that it was an acceptable follow-up question to whether Flores was employed and how he obtained an income. The issue of Flores' financial condition was elicited on direct examination and was appropriately re-addressed in the State's cross-examination.

¶61. Based on our review of the facts of this case, we conclude that Flores was not denied a fair and impartial trial. Flores has failed to demonstrate manifest necessity and there exists no clear and convincing evidence that the District Court's rulings were erroneous. We further conclude that because we affirm the judgment of the District Court and the jury's verdict, there is no need to address the issue of whether the doctrine of double jeopardy bars the retrial of this case.

¶62. The judgment of the District Court and jury is affirmed.


/S/ JIM REGNIER


We Concur:


/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART