**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**

**v.**

**VINCENT N. THOMPSON, JR., Appellee/Defendant**

S. Ct. Criminal No. 2011-0103

Supreme Court of the Virgin Islands

August 6, 2012

ATIIM D. ABRAHAM, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellant.*

JOHN H. BENHAM III, ESQ., Benham & Chan, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 6, 2012)

HODGE, *Chief Justice.* The People of the Virgin Islands appeal the Superior Court's order setting aside the jury's guilty verdict and dismissing the charge against Vincent N. Thompson, Jr. for unauthorized use of a firearm during the commission of a crime of violence. Thompson cross-appealed, arguing that there was insufficient evidence to sustain his convictions for reckless endangerment in the first degree, carrying or using a dangerous weapon, and unauthorized use of a firearm during the commission of a crime of violence. We conclude that an inconsistent verdict is not a sufficient reason for setting aside a verdict and that there

was sufficient evidence to sustain Thompson's convictions for reckless endangerment in the first degree, carrying or using a dangerous weapon, and unauthorized use of a firearm during the commission of a crime of violence.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On the evening of January 12, 2011, shots were reported to have been fired at a public housing community in St. Thomas. While investigating, members of the Virgin Islands Police Department (VIPD) observed a silver SUV matching the description of a vehicle alleged to have been connected with the shooting traveling in the vicinity of where the shots were reported fired. When the police attempted to stop the vehicle, the driver sped off into a residential area. After attempting to evade the pursuing police, the vehicle pulled into the parking lot of a nearby housing complex, and its occupants exited the vehicle and fled the scene. Police found a cell phone on the ground near the driver's door of the abandoned vehicle, and inside the vehicle police discovered a firearm magazine on the rear passenger seat. Back at the housing community where the shooting had been reported, police discovered that one of the buildings, as well as several cars in the area, had recently been struck by gun shots. The police also recovered approximately ten spent .223 caliber shell casings that matched the type of bullets found in the firearm magazine that was discovered in the back seat of the silver SUV.

The owner of the silver SUV was determined by police to be Avondale George, who resided in the same housing community where the car was abandoned. The police were also informed by persons in the housing community that Avondale George's son Dale George (George) regularly operated the vehicle. Shortly thereafter, George was located by police in an upstairs neighbor's apartment and taken into custody. The next day, January 13, 2011, George was interviewed by members of the VIPD. According to George's trial testimony, he had gone to the housing community earlier in the day on January 12, 2011, to drop off his girlfriend. While he was there, a masked man approached his vehicle, pointed a gun at him, and asked him the whereabouts of his brother. George responded that he did not know where his brother was presently. The masked man struck George in the temple with the butt of his gun and told him to leave and never come back. After George left the housing

community he contacted Shakieme S. Freeman and Thompson, and informed them what had transpired. George then picked up Freeman and Thompson, as well as a third individual later identified by George as Elroy Faulkner. At the time George picked these individuals up, Freeman was carrying a black handgun, Faulkner was carrying some type of automatic firearm, and Thompson got into George's vehicle with "a black shirt covering something big." (Trial Tr. 193-95.) George then drove to an area close to the housing community where he had been assaulted earlier that day. There, Freeman, Thompson, and Faulkner exited the vehicle and headed towards the housing community, while George drove a short distance away and waited.

A short time later George heard a series of gun shots coming from the direction of the housing community, which caused him to drive back to the area where Freeman, Thompson, and Faulkner had exited his vehicle. Thompson called George, however, and directed him to another location. When George arrived at that location Faulkner jumped in his vehicle and told him to call Thompson. George complied, and when Thompson answered Faulkner took the phone and told Thompson to "throw the weapons over the fence and jump over because the cops are already here." (Trial Tr. 200.) Faulkner then left George's vehicle and ran behind a nearby building. A few moments later Faulkner, Freeman, and Thompson ran up to George's vehicle without any weapons and the group drove away. While George was driving away, police officers responding to the shooting attempted to stop George's vehicle, which, as discussed above, caused George, Faulkner, Freeman, and Thompson to abandon the vehicle in a nearby housing community and flee the scene on foot.

Based on this evidence, Freeman, Faulkner, and Thompson were arrested. Thompson was subsequently charged with conspiracy to commit first degree murder, reckless endangerment in the first degree, carrying or using a dangerous weapon, discharging a firearm, and unauthorized use of a firearm during the commission of a crime of violence.[1] A jury trial commenced on July 11, 2011, and at the close of all evidence the trial court dismissed the conspiracy to commit first degree murder charge

---

[1] Freeman and Faulkner were also charged with conspiracy to commit first degree murder, reckless endangerment in the first degree, carrying or using a dangerous weapon, discharging a firearm, and unauthorized use of a firearm during the commission of a crime of violence respectively. However, neither of them is a party to this appeal.

against Thompson. The remaining charges were submitted to the jury, and the jury found Thompson guilty of reckless endangerment in the first degree pursuant to 14 V.I.C. § 625(a), carrying or using a dangerous weapon pursuant to 14 V.I.C. § 2251(a)(2), and unauthorized use of a firearm during the commission of a crime of violence pursuant to 14 V.I.C. § 2253(a). The jury, however, found Thompson not guilty of discharging a firearm pursuant to 23 V.I.C. § 479(a). Thompson filed a post-trial motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing, among other things, that since the jury found him guilty of unauthorized use of a firearm during the commission of a crime of violence, but not guilty of the predicate crime of violence — discharging a firearm — the trial court should dismiss his conviction for unauthorized use of a firearm during the commission of a crime of violence.

In a Memorandum Opinion and Order entered on October 17, 2011, the trial court granted Thompson's post-trial motion for judgment of acquittal with respect to the unauthorized use of a firearm during the commission of a crime of violence charge. The trial court concluded that since both charges required proof that Thompson discharged a firearm, the jury's "finding of not guilty as to [the] predicate offense logically excludes the finding of guilt as to the compound offense." (J.A. 15-16.) The trial court thus set aside the jury's guilty verdict and entered a judgment of acquittal.[2] The People filed its timely notice of appeal on November 14, 2011,[3] and Thompson filed his timely notice of appeal on December 14, 2011.[4]

---

[2] The trial court, however, denied Thompson's motion for judgment of acquittal with respect to his convictions for reckless endangerment in the first degree and carrying or using a dangerous weapon.

[3] *See* V.I.S.CT.R. 5(b)(2) ("When an appeal by the Government is authorized by statute (as under 4 V.I.C. Section 33(d)), the notice of appeal shall be filed in the Supreme Court within 30 days after (i) the entry of the judgment or order appealed from or (ii) the filing of a notice of appeal by any defendant.").

[4] *See* V.I.S.CT.R. 5(b)(1)(ii) ("In a criminal case, a defendant shall file the notice of appeal in the Supreme Court within 30 days after the entry of . . . a notice of appeal by the Government.").

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

 Prior to deciding the merits of the People's appeal, we must first determine if we have jurisdiction over this matter. In a Memorandum Opinion and Order entered on October 17, 2011, the Superior Court dismissed the unauthorized use of a firearm during the commission of a crime of violence charge against Thompson. Accordingly, the People cannot appeal this criminal judgment "unless statutory authority expressly and clearly permits such an appeal." *People v. George*, 49 V.I. 504, 507 (V.I. 2008). "In the Virgin Islands, title 4, section 33(d) of the Virgin Islands Code provides the People with the statutory authority to appeal certain criminal judgments." *People v. Pratt*, 50 V.I. 318, 321 (V.I. 2008). Under 4 V.I.C. § 33(d)(1):

> In a criminal case an appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution.

Here, the Superior Court entered its judgment of acquittal after a verdict of guilty had been entered by the trier of fact. The People may therefore appeal from that ruling without subjecting the defendant to double jeopardy. *See People v. Clarke*, 55 V.I. 473, 477 (V.I. 2011) (citing *Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S. Ct. 1129, 160 L. Ed. 2d 914 (2005) ("When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty.")). Accordingly, this Court possesses jurisdiction over the People's appeal pursuant to 4 V.I.C. § 33(d)(1).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Accordingly, we exercise plenary review of a trial court's grant of a post-verdict judgment of acquittal. *See United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).

When a defendant challenges the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011) (internal quotation marks omitted). We thus review a trial court's denial of a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure *de novo. See DeSilvia v. People*, 55 V.I. 859, 865 (V.I. 2011) (citing *Stevens v. People*, 52 V.I. 294, 304-05 (V.I. 2009)).

## B. Setting Aside of the Jury's Verdict

The People argue that the trial court erred in setting aside the jury's guilty verdict and dismissing the charge against Thompson for unauthorized use of a firearm during the commission of a crime of violence. We agree.

▮ The trial court set aside the jury's guilty verdict and entered a judgment of acquittal with respect to the unauthorized use of a firearm during the commission of a crime of violence charge because the jury found Thompson not guilty of discharging a firearm, the predicate offense of the unauthorized use of a firearm during the commission of a crime of violence charge. The trial court concluded that the jury's "finding of not guilty as to [the] predicate offense logically excludes the finding of guilt as to the compound offense." (J.A. 15-16.) It is well-settled, however, that an inconsistent verdict is not a sufficient reason for setting a verdict aside. *United States v. Powell*, 469 U.S. 57, 64-66, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). In *Powell*, the United States Supreme Court held that even

> where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions; but that does not show that they were not convinced of the defendant's guilt." The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First . . . inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake,

349

compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Id.* (citation omitted). Courts should thus "not infer innocence when a jury, whether through mistake, compromise, or lenity, reaches inconsistent verdicts." *United States v. Craig*, 358 Fed. Appx. 446, 451 n.5 (4th Cir. 2009) (internal quotation marks omitted). As observed in *Craig*, the United States Supreme Court also expressly considered and rejected the argument that inconsistent verdicts justify court intervention in situations where the jury acquits a defendant of a predicate felony, but convicts on the compound felony.[5] *Id.* (quoting *Powell*, 469 U.S. at 67).

■ In *United States v. Dobyns*, three defendants were charged with kidnapping while armed, assault with intent to kidnap while armed, and possession of a firearm during a crime of violence (PFCV). 679 A.2d 487, 488 (D.C. 1996). The jury acquitted all three of kidnapping while armed and assault with the intent to kidnap while armed, but convicted them of PFCV. *Id.* The defendants subsequently moved for post-verdict judgments of acquittal of the PFCV charges. *Id.* Because the defendants were acquitted of the two offenses that could serve as necessary predicates for the PFCV charge, the trial court granted their motions. *Id.* On appeal, the

---

[5] In concluding that a court may grant a judgment of acquittal on a compound offense when the jury finds a defendant not guilty of the predicate offense, the Superior Court relied on *United States v. Atlantic States Cast Iron Pipe Co.*, Crim. No. 03-852, 2007 U.S. Dist. LEXIS 56562, at *205 (D.N.J. Aug. 2, 2007) (unpublished). In *Atlantic States*, the court stated that "[i]t is well established that where a verdict of conviction for a defendant is inconsistent with a judgment of acquittal for that defendant on another count, judgment of acquittal on the count of conviction is not required." *Id.* The Superior Court interpreted this language to mean that "[i]t is well established that where a verdict of conviction for a defendant is inconsistent with a judgment of acquittal for that defendant on another count, a Court *may* grant a judgment of acquittal as to the conviction, but acquittal is *not required*." (J.A. 16 n.13 (emphasis in original)). *Atlantic States*, however, does not stand for the proposition that a trial court has the discretion to grant a judgment of acquittal to a compound offense when the jury finds a defendant not guilty of the predicate offense. In fact, *Atlantic States* recognized that "[t]he Third Circuit, applying *Dunn* and its progeny, has long held that '[w]here different offenses are charged in separate counts of an indictment, an acquittal on one or more of the counts does not invalidate a verdict of guilty on another even where the same evidence is offered in support of each count.'" *Atlantic States*, 2007 U.S. Dist. LEXIS 56562, at *205 (collecting cases). Moreover, in *Atlantic States*, the trial court upheld the defendants' conspiracy convictions despite the fact that the jury acquitted them of the substantive crimes. *Id.* 2007 U.S. Dist. LEXIS 56562, at *211. The Superior Court's reliance on *Atlantic States* in granting Thompson a judgment of acquittal for unauthorized use of a firearm during the commission of a crime of violence was therefore misplaced.

350

District of Columbia Court of Appeals recognized that the jury's acquittals on the charges of assault with intent to kidnap while armed and kidnapping while armed were logically inconsistent with the convictions of PFCV. *Id.* at 490. Nonetheless, the court, relying on the United States Supreme Court's decisions in *Dunn v. United States*[6] and *Powell*,[7] reversed the trial court's order granting post-verdict judgments of acquittal. *Id.* The court concluded that criminal convictions based on inconsistent verdicts should be upheld as long as there is sufficient evidence to support the convictions. *Id.* We agree with this analysis. Therefore, we conclude that the Superior Court erred in setting aside the jury's guilty verdict and dismissing the charge against Thompson for unauthorized use of a firearm during the commission of a crime of violence.

### C. Sufficiency of the Evidence

■ Thompson argues on appeal that the People failed to prove that he ever possessed or discharged a firearm on January 12, 2011, and thus, there was insufficient evidence to sustain his convictions for reckless endangerment in the first degree, carrying or using a dangerous weapon, and unauthorized use of a firearm during the commission of a crime of violence. We disagree. The People presented sufficient evidence to allow a jury to reasonably conclude that Thompson possessed a firearm on January 12, 2011, and that he either discharged or aided and abetted in the discharge of a firearm.[8]

---

[6] 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 356 (1932).

[7] 469 U.S. at 67.

[8] The information in this case charged Thompson with reckless endangerment in the first degree pursuant to 14 V.I.C. §§ 625(a) & 11(a), carrying or using a dangerous weapon pursuant to 14 V.I.C. §§ 2251(a)(2) & 11(a), and unauthorized use of a firearm during the commission of a crime of violence pursuant to 14 V.I.C. § 2253(a). Thus, since the information charged Thompson with committing these crimes under title 14, section 11(a), the People could convict him by either proving that he committed the crimes himself or that he aided and abetted another commit the crimes. *See* 14 V.I.C. § 11(a) ("Whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). "To be convicted as a principal for aiding and abetting in the commission of a crime, the government must prove two elements: (1) that the substantive crime was committed, and (2) that the defendant knew of the crime and attempted to facilitate it." *Francis v. People*, 52 V.I. 381, 386 (V.I. 2009) (quoting *Gov't of the V.I. v. Peters*, 121 F. Supp. 2d 825, 828 (D.V.I. App. Div. 1998). The People must prove that the "defendant associated

351

■ George testified at trial that when he picked up Freeman, Faulkner, and Thompson, Freeman was openly carrying a black handgun, Faulkner was openly carrying some type of automatic firearm,[9] and Thompson got into George's vehicle with "a black shirt covering something big." (Trial Tr. 193-95.) Although George did not specifically state that the "something big" underneath Thompson's black shirt was a gun, he did testify on cross examination that everyone in the car except him had a gun. Based on this testimony, a rational jury could conclude that Thompson, Freeman, and Faulkner were all in possession of firearms on the night of the shooting. Moreover, because Faulkner and Freeman were openly carrying firearms when they got into George's car, a jury could also reasonably conclude that Thompson was fully aware that Faulkner and Freeman were in possession of firearms that evening.

■ Additionally, there was sufficient evidence to allow a rational jury to conclude that Thompson either discharged a firearm at the housing community or aided and abetted Faulkner and/or Freeman in discharging a firearm at the housing community. When the four individuals arrived in the area of the housing community, Thompson instructed George to drive home and wait for his signal, and then Thompson, Faulkner, and Freeman all masked their faces to avoid being identified and headed towards the housing community with their firearms. A short time later George heard the sound of gunfire coming from the housing community, and after the shooting stopped Thompson called George on his cell phone and directed him to where he, Freeman, and Faulkner were located. When George reached that location, Faulkner jumped in George's vehicle and told him to call Thompson. George complied, and when Thompson answered Faulkner took the phone and told Thompson to "throw the weapons over the fence and jump over because the cops are already here." (Trial Tr. 200.) Faulkner then left George's vehicle and returned a few moments later with Freeman and Thompson, who then fled the scene together. Finally, the spent .223 shell casings that were found at the housing community immediately after the shooting matched the type of bullets

---

himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (quoting *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)).

[9] According to George, Faulkner was even discussing how the ammunition clip in his gun had jammed, and attempting to fix it in the vehicle.

found in the magazine clip that was discovered in the back seat of George's car. This evidence provided more than a sufficient basis to allow a jury to reasonably conclude that at least one of the individuals — Thompson, Freeman, or Faulkner — discharged a firearm at the housing community. And even if Thompson did not actually discharge a firearm, the evidence clearly establishes that he associated himself with the venture of shooting up the housing community where George had been assaulted earlier that day, "that he participated in it as something he wished to bring about, and that he sought by his words [and] action[s] to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (quoting *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)). *See Boston v. People*, 56 V.I. 634, 644 n.10 (V.I. 2012) ("The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted." (quoting *Altamirano v. Gonzales*, 427 F.3d 586, 594 n.8 (9th Cir. 2005))). Therefore, we conclude that there was sufficient evidence presented at trial to allow a jury to reasonably conclude that Thompson possessed a firearm on January 12, 2011, and that he either discharged such firearm or aided and abetted in the discharge of another firearm.

### III. CONCLUSION

 An inconsistent verdict is not a sufficient reason for setting a verdict aside, even in situations where the jury acquits a defendant of a predicate felony, but convicts on the compound felony. There was also sufficient evidence presented at trial to sustain Thompson's convictions for reckless endangerment in the first degree, carrying or using a dangerous weapon, and unauthorized use of a firearm during the commission of a crime of violence. We therefore reverse the portion of the trial court's order granting Thompson's post-trial motion for judgment of acquittal for unauthorized use of a firearm during the commission of a crime of violence, reinstate the defendant's conviction on that charge, and affirm the trial court's order denying Thompson's post-trial motion for judgment of acquittal for reckless endangerment in the first degree and carrying or using a dangerous weapon.