**ASHANA POWELL, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0057

Supreme Court of the Virgin Islands

August 6, 2013

GREGORY ADAM THORP, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 6, 2013)

HODGE, *Chief Justice.* Ashana Powell appeals from the Superior Court's Judgment and Commitment, entered on July 20, 2012, in which she was convicted of three counts of carrying or using a dangerous weapon in violation of title 14, section 2251(a)(2)(A) of the Virgin Islands Code.[1] For the reasons discussed below, we will affirm the Judgment of the Superior Court, but will remand the matter for resentencing in compliance with title 14, section 104 of the Virgin Islands Code.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On the evening of March 1, 2010, Powell was playing the gaming machines at the Rock Bar located in Port of Sale Mall, on St. Thomas, Virgin Islands, when Rebecca Seybold, Maria Cavalli ("Maria"), and Pauline Cavalli ("Pauline") entered the bar. Upon arrival, Seybold began to curse at the woman seated next to Powell at the machines concerning a previous incident involving a dog, alleging that the woman was a bad dog owner. The woman left the area and, according to the testimony of several witnesses, Seybold, apparently belligerently drunk, began to curse at Powell about the dog. (J.A. 212-13.) Powell was heard asking Seybold to leave her alone and pushed Seybold when she would not go away. According to Maria, she and Pauline were outside the door of the bar at this time, and as Maria was walking inside to grab Seybold, she caught her "flying backwards," although another witness indicated Powell did

---

[1] Powell was charged with six counts: mayhem, assault in the first degree, assault in the third degree, and using a dangerous weapon during the commission or attempted commission of a crime of violence for each. A jury found her not guilty of mayhem, first-degree assault and third-degree assault, but guilty of the remaining weapons charges pursuant to section 2251(a)(2)(B). The trial court subsequently entered judgment on the "lesser included" offense of carrying or using a dangerous weapon. (J.A. 23-26.)

not push Seybold very hard. (J.A. 116-17, 216.) Although Maria testified that she never struck Powell inside the Rock, nor did Seybold, several other witnesses indicated that a physical altercation ensued between the three women and Powell inside of the Rock, and that three men had to separate them. (J.A. 217.) Two witnesses noted that Maria reached over one of the men who attempted to restrain the fight and punched Powell in the face. (J.A. 219, 237.) Robert Finch, a security guard at the Rock that night, testified that as he got in the middle to break up the fight, the "white females" were swinging over his shoulder hitting Powell, and that one of them threw something at Powell's head. (J.A. 279.) Once outside, Finch saw that Powell was bleeding from her head. (J.A. 279.) Another patron, Nioka Reed, indicated that she saw one of the three women throw a bottle at Powell, which hit her in the head. (J.A. 454.) A witness, Jack Ervin, and another security guard, Lloyd Hermon, also testified that Powell appeared to have been hit and had blood running down her face. (J.A. 255, 306.)

Once the women were separated, Finch escorted Powell outside the Rock, while Brad Robbins, another patron, and Ervin led the three women away. (J.A. 247-48, 280-81, 417.) According to Finch, although the women were being held back, they still attempted to "rush" Powell as she went to her car. (J.A. 281.) After leaving the Rock, the three women proceeded on foot through the First Bank drive-thru, then toward the parking lot near Mojo's Restaurant ("Mojo's"), and Powell followed in her vehicle. Specifically, there was testimony that Powell drove in the wrong direction through the First Bank drive-thru after the three women, and that the women were in the parking lot, approximately two car-lengths ahead of Powell, screaming and being held back.[2] (J.A. 284-85.) At this point, Powell was on the phone with the police and was visibly upset. (*Id.*) Hermon, who went to talk to Powell in the First Bank area, testified that he called the police again because the women were yelling (from a distance) and they were "kind of like getting it to be — how you would say, to get the fight to start again." (J.A. 312.) Around this time

---

[2] The sequence of events is somewhat unclear at this point. According to Maria, Powell pulled up in a vehicle and began to argue with Seybold again. Maria went to Mojo's to search for help, and then went back to the parking lot where she found Seybold holding her ribs, walking with the assistance of a man. (J.A. 118.) Powell, however, testified that as she drove through the drive-thru, Seybold hit her car, at which point Powell stopped and exited the vehicle, then got into another physical altercation with Seybold and Maria, who then ran away in an unknown direction.

Finch had also returned to defuse the situation, and testified that he advised Powell to let the police handle it. He left her standing near her vehicle talking to the police, and stated at trial that,

> she had her senses about her because she was ... calling the police. But at the same time they were still agitated .... [S]he [still] seemed good enough and capable enough .... they were still being agitators. They were yelling and screaming, but they were being held back or whatever, so as long as she stayed where she was ... it would be cool.

(J.A. 289-90.)

Similarly, another security guard, Adelbert Molyneaux, was also in the First Bank drive-thru area talking with Powell. He too testified to telling Powell that she had done the right thing and to let the police come do their job. (J.A. 164.) Molyneaux then indicated that a hostile lady and a male came towards them and that Powell had walked off. (J.A. 165.) He subsequently heard a trash can turning over and glass breaking, after which he observed Powell running toward Mojo's. (J.A. 166.) Ervin also saw Powell stop at a trash can before proceeding to the area where the other women were located, and a Mojo's bartender, Christopher Maheu, likewise indicated that he saw Powell walking with a broken Heineken bottle. (J.A. 253, 261.) When Molyneaux got to Mojo's, he saw a female swing at Powell first; Powell swung back and hit the woman in her eye — afterwards, there was a glass bottle on the ground. (J.A. 167, 172.) Molyneaux's testimony is corroborated by Todd Vansickle, a patron at Mojo's who saw Maria approach Powell in the parking lot and push her. (J.A. 230.) Vansickle testified that Powell slapped Maria, that Maria responded by attempting to slap Powell, and that Maria then lunged at Powell. (Id.) The next thing he saw was Powell hitting Maria in the face with a broken bottle. (J.A 231.)

Maria testified that Powell approached them near Mojo's and threatened, "[o]ne, [t]wo, [t]hree, you all dead," while pointing at each woman. (J.A. 119.) Maria claimed that Powell started to go after Pauline, who ran, then Maria bent down to pick up some sunglasses, and Powell charged and hit her, presumably with the bottle. (J.A. 120-21.) Powell instead indicated that Pauline threw something sharp over Powell's head and that she grabbed her and started to fight because she did not know what Maria was bending down to get and wanted to defend herself. (J.A.

450

324.) Powell hit Maria in her eye with the broken bottle. (J.A. 120.) Maria also sustained injuries on her arm, and had to have her eye removed. (J.A. 122.) Robbins was also injured as he attempted to separate the fight, receiving a large cut on his arm.[3] (J.A. 425.)

■ Powell was acquitted of the three substantive counts of mayhem, first degree assault and third-degree assault but was convicted of three counts of carrying or using a dangerous weapon. Pursuant to a motion, the trial court subsequently acquitted Powell on all counts, finding that acquittal was mandatory due to the inconsistency of the verdicts. On appeal by the People to this Court, we reversed the Judgment and Acquittal and remanded the matter for sentencing. *People v. Powell*, 56 V.I. 630, 631-33 (V.I. 2012) (*Powell I*). Accordingly, Powell was sentenced pursuant to a July 20, 2012 Judgment and Commitment of the Superior Court. (J.A. 23-26.) Powell filed her timely Notice of Appeal on July 10, 2012.[4]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's July 20, 2012 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Powell's appeal. *See Nicholas v. People*, 56 V.I. 718, 729 (V.I. 2012) (noting that a "written judgment embodying the adjudication of guilt and the sentence imposed" is considered a final judgment in criminal matters (citing *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012))); *Potter v. People*, 56 V.I. 779, 787

---

[3] Robbins testified that he was cut after Maria was cut, (J.A. 424), whereas Powell claimed that at the time Robbins was cut, Maria had not been injured. Powell indicated that she accidentally struck Robbins and was focusing on him when Pauline threw the sharp object over her head, resulting in the altercation in which Maria got cut. (J.A. 470.) Robbins, however, indicated that after Powell cut Maria, she was going after Pauline and it was when he tried to keep her from hitting Pauline, that he was injured. (J.A. 425.)

[4] "A notice of appeal filed after the announcement of an order or judgment, but before the entry of a writing memorializing the same, is treated as filed on the date of and after such entry . . . and is considered timely filed." *Potter v. People*, 56 V.I. 779, 787 n.10 (V.I. 2012) (internal quotation marks omitted); *see also* V.I.S.CT. R. 5(b)(1).

(V.I. 2012) (same). The standard of review for this Court's consideration of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 422, 55 V.I. 1324 (3d Cir. 2011). The Superior Court's evidentiary decisions are reviewed for abuse of discretion. *Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008). We review unpreserved errors under the plain error standard. V.I.S.CT. R. 4(h); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

When reviewing a claim of insufficient evidence, this Court views all issues of credibility in the light most favorable to the People. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). We will affirm where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011) (internal quotation marks and citation omitted); *see also Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (" '[E]vidence need not be inconsistent with every conclusion save that of guilty, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.' " (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996))).

## B. Ineffective Assistance of Counsel

■■ "[T]he Sixth Amendment of the United States Constitution[] guarantee[s] that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense.' "[5] *Francis v. People*, 57 V.I. 201, 215 (V.I. 2012) (quoting U.S. CONST. amend. VI) (omission and third alteration in original). Powell contends that trial counsel's failure to object to the admission of certain evidence and stipulation to the admission of several photographs violated this right and amounted to ineffective assistance of counsel.[6] (Appellant's Br.

---

[5] The Sixth Amendment is made applicable to the Virgin Islands through section 3 of the Revised Organic Act. *See* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 2013) (preceding V.I. CODE ANN. tit. 1).

[6] Although, ordinarily, ineffective assistance of counsel claims must be raised in a collateral proceeding rather than on direct appeal, "such a collateral review is unnecessary if the appellate court can conclude that it has 'an adequate record' " to resolve the issue. *Plaskett v.*

19-24.) Specifically, Powell contests her trial counsel's stipulation to the admission of exhibits 6, 7, 9, and 10 — photos of Maria's and Robbins's injuries, as well as Powell's bloodied hand — and counsel's failure to object to the admission of exhibits 18, 19, 20, 21, 22, and 26 — photos depicting the blood spatter at the crime scene — as well as the testimony of Corporal Neal Bailey describing the exhibits in question, the testimony of Officers Ecedro Lindquist Jr. and Cornel Esprit regarding the failure of the ambulance to arrive, and the use of Powell's prior conviction for third-degree assault as impeachment evidence. To prevail on a claim of ineffective assistance of counsel, Powell must demonstrate that "counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced [her] resulting in an unreliable or fundamentally unfair outcome in the proceeding." *Stanislas v. People*, 55 V.I. 485, 494 (V.I. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)); *see also Corraspe v. People*, 53 V.I. 470, 479-80 (V.I. 2010). "The proper measure of [an] attorney['s] performance . . . [is] simply reasonableness under prevailing professional norms," and, therefore, review of counsel's performance is generally highly deferential, as there is a presumption that "under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 688-89 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). Accordingly, Powell must overcome this presumption by pointing to acts or omissions of counsel that fell outside the realm of "professionally competent assistance" to satisfy the first element of the two-part test. *Id.* at 690.

 To demonstrate prejudice, the defendant must ordinarily show that but for the errors of counsel, the outcome of the proceedings would have been different. *See Corraspe*, 53 V.I. at 487. Powell must demonstrate a "reasonable probability" of such prejudice — "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694-95 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would

---

*Gov't of the V.I.*, 147 F. Supp. 2d 367, 372 (D.V.I. App. Div. 2001) (quoting *Rivera v. Gov't of the V.I.*, 37 V.I. 68, 79 (D.V.I. App. Div. 1997)); *see also Codrington v. People*, 57 V.I. 176, 191 (V.I. 2012) (citing *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004)); *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). The record in this case is sufficient to allow this Court to review Powell's claim.

have had a reasonable doubt respecting guilt."). In determining prejudice, this Court must take into account the totality of the evidence, including the pervasive or isolated effect of an error and the level of support in the record for the jury's conclusions. *Id.* at 695-96. "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court . . . must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

■ Although the testimony and exhibits in question were certainly prejudicial, considering the totality of the evidence, Powell has not demonstrated a degree of prejudice that would render the proceedings unreliable. Accordingly, Powell has made an insufficient showing that she was prejudiced by the alleged errors of trial counsel, and has therefore not met her burden of demonstrating that she received ineffective assistance of counsel at trial.[7] *Id.* at 697.

In regards to the photo evidence, Powell contends that the probative value of the photos was slight in light of the alternative evidence describing the same injuries, and argues that their prejudicial impact was

---

[7] Because Powell has failed to establish prejudice, we need not decide whether trial counsel's performance was actually deficient, although the Court recognizes that Powell may have been able to demonstrate this point. Trial counsel stipulated to the admission of several graphic color photo exhibits depicting the victims' injuries, and failed to so much as object to the admission of other photos depicting blood spatter at the crime scene. (J.A. 39-50.) Most notably, exhibit 7 shows a deep, bloody gash spanning Robbins's wrist, as well as his hand covered in blood; exhibit 9, depicts several gaping, bloody gashes across Maria's forearm; exhibit 10 is a close-up photo of Maria's bloodied face, showing a gash across her eye; and exhibits 20 and 22 show a large blood stain and spatter on the ground in front of Mojo's. As argued by Powell on appeal, considering the potentially prejudicial and obviously inflammatory nature of these photos, it is unlikely that it could reasonably be said that counsel's stipulation and failure to object to their admission were strategic choices, beyond conservation of time. (Appellant's Br. 19-21); *see Headley*, 923 F.2d at 1084 (finding no strategic choice in counsel's failure to make an argument for a downward adjustment on an offense where the facts and law suggested he should have). Nor does there seem to be any strategic basis for failing to object to the admission of an exhibit — the deadly weapon (broken bottle) — where there was an apparent gap in the chain of custody, or the use of Powell's prior conviction for the same crime for which she was on trial (third-degree assault) as impeachment evidence. (Appellant's Br. 20-22.) However, there may arguably have been a strategic basis for failing to object to the testimony of two officers concerning the failure of the ambulance to arrive to transport the victim (a point that Powell contends on appeal was irrelevant but sympathetic to victim), as the testimony could have lessened the notion that Powell was the sole cause of the severity of Maria's injury.

pervasive, altering the entire perception of the evidence. (Appellant's Br. 22.) Importantly, several witnesses gave verbal accounts of the incident that were arguably as or more gruesome than the photographs. (J.A. 121-22 (Maria testified that she had to have her eye removed); 205 (Officer Esprit stated Maria "had her entire face with a towel over it . . . [and] she was bleeding pretty bad 'cause there was blood on the ground surrounding her and all over the towel"); 233 (Vansickle testified that he had "never seen anybody stand and bleed as much"); 333-34 (Dr. Kidane Assefa, Maria's treating physician and expert in ophthalmology and eye surgery, testified that he removed several pieces of glass from her eye and stated "when [he] looked at [her eye] the first time [he] encountered her, she was profusely bleeding . . . . [t]he eye was severely damaged and the eyelid was cut . . . . [w]hen you encounter an injury like this and you see the inside of the eye was exposed on the outside, you know it's very severe"[8]).)[9] Accordingly, although this other testimony may have lessened the need to use the photos, it is likely that the verbal descriptions of the injuries and crime scene also lessened the potential impact of the photos. While we recognize the other perspective — that the photos may have enhanced the prejudicial impact of the testimony as some of the more detailed and provocative accounts of the injuries were given as the witness was questioned regarding the relevant photographic exhibit and the record indicates the exhibits were simultaneously published for the jury, (see, e.g., J.A. 123 (the court asked Maria to describe exhibits 9 and 10, in response to which Maria noted that her eyeball had been sliced in half)) — even without the photos, it is reasonable to assume that the witnesses would have still been questioned concerning the injuries and

---

[8] Although Dr. Assefa's description began as he was asked whether he recognized exhibits 9 and 10, he testified concerning his personal observations of Maria and his treatment, rather than solely based on the photo. (J.A. 333-34.) Similarly, Dr. Brian Bacot, who treated Robbins, was also asked to identify and describe exhibits 7 and 8, the photographs of Robbins's injury. Nonetheless, although the exhibits were published for the jury, the more descriptive testimony of the injury came from his personal observations in treating Robbins. (J.A. 352-54, 360 (Dr. Bacot testified that the first thing he noticed was that he could see cut tendons within the wound, and that it was "probably two to three centimeters as far as depth").)

[9] Powell also contends that exhibit 6, which depicts her hand covered in blood, appeared to be her hand covered in the victims' blood, and probably stirred images of murderers and had no probative value. There is testimony that Powell's hand was cut and that she received stiches as a result. Accordingly, as the photo may simply depict Powell's own blood from her own injury, it is not presumptively prejudicial.

would still have given descriptions regarding the wounds. (*See, e.g.,* J.A. 127 (Maria was asked to show the jury the injuries to her eye and arm).) Further, even considering the impact of the photos, Powell has not shown that trial counsel's objection to their admission would have altered the jury's determination — rather, it is more likely than not that such objection would have been overruled. *See infra* Part F (discussing Rule 403 argument pertaining to same evidence).[10]

Similarly, we are not persuaded that trial counsel's failure to object to the admission of exhibit 16 — the broken glass bottle — based on an apparent gap in the chain of custody, or the testimony of Officers Lindquist and Esprit, based on the relevance of their testimony, altered the outcome of the jury's decision. Notwithstanding the fact that chain of custody challenges go to the weight of the evidence rather than its admissibility, *see Browne v. People*, 56 V.I. 207, 221 n.12 (V.I. 2012) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.11, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)), in light of the testimony as a whole, it was clear that the weapon used was a broken bottle — several witnesses testified to this fact, and Powell also admitted to using a broken bottle. (J.A. 231, 261, 469.) Accordingly, whether or not the bottle was admitted into evidence was not likely dispositive. Moreover, the bottle was probative and likely helpful to the jury's understanding of the nature and cause of the injuries, as well as Powell's claim of self-defense. Furthermore, while the extended testimony of the officers concerning the failure of the ambulance to respond to the scene may have been irrelevant or more prejudicial than probative, there was sufficient testimony on the record concerning Maria's injury to have evoked sympathy from the jury, that these relatively brief statements of two out of 21 government witnesses did not likely alter the outcome of the trial. Additionally, the notion of the delay and ultimate failure of the ambulance to arrive may have even shifted the jury's perception of the cause of the loss of Maria's eye onto the lack of emergency medical response rather than solely as a

---

[10] Notably, Powell was found not guilty of mayhem, first-degree assault, and third-degree assault, but guilty of use of a deadly weapon during the commission or attempted commission of each of these crimes. Though arguably, absent the imagery of the photo evidence, a jury might have acquitted Powell on all counts, considering that Powell asserts ineffective assistance based on trial counsel's failure to object/stipulation to the admission of the photos, it is unlikely that an objection would have so altered the outcome of the trial in light of the probative value of the evidence in question. *See infra* Part F (discussing Rule 403 argument).

result of Powell's assault — a possibility that tends to lessen Powell's suggestion that she was unfairly prejudiced or that the trial was unreliable due to the admission of the evidence. Accordingly, Powell has failed to meet her burden of demonstrating that she received ineffective assistance of counsel at trial.

## C. Sufficiency

■ Powell contends that there was insufficient evidence to support her convictions for use of a dangerous weapon during the commission of a crime of violence — mayhem, first-degree assault, and third-degree assault — as the People did not establish beyond a reasonable doubt that she intended to use the dangerous weapon unlawfully against another and, "as a matter of law, the jury necessarily found a lack of evidence to support" a finding that the weapon was used during a crime of violence.[11] (Appellant's Br. 24, 27.) As expressed earlier, prior to sentencing, Powell was initially acquitted on all counts pursuant to a motion granted by the trial court. *Powell I*, 56 V.I. at 631-32. The court believed acquittal was mandatory, as the jury's verdict of "guilty" on the counts charging Powell with possession of a dangerous weapon during the commission of a crime of violence, in violation of section 2251(a)(2)(B), was inconsistent with its "not guilty" verdict on each of the "crimes of violence." *Id.* On appeal by the People, we reversed the Judgment of Acquittal and remanded the matter for sentencing, holding that the premise of the acquittal — that it was mandatory due to the inconsistency — was erroneous. *Id.* at 633. In so holding, we noted that our decision did not address whether the evidence on the counts for which Powell was convicted was sufficient, and did not preclude later consideration of the insufficiency issue. *Id.* As emphasized in *United States v. Powell*, 469 U.S. 57, 67, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (emphasis added),

> review [for sufficiency] should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at

---

[11] Powell was originally charged under title 14, section 2251(a)(2)(B), however, as she was found not guilty of each "crime of violence," she was ultimately sentenced pursuant to section 2251(a)(2)(A). *See Gov't of the V.I. v. Williams*, 23 V.I. 125, 131 (D.V.I. 1987) (concluding that "where the jury acquits of the predicate 'crime of violence', but convicts on the weapons charge, sentence may be imposed under 14 V.I.C. § 2251(a)(2)(A)").

trial *could* support any rational determination of guilt beyond a reasonable doubt. . . . This review should be independent of the jury's determination that evidence on another count was insufficient.

*See also id.* at 69 (applying this reasoning to a scenario where a defendant is acquitted of a predicate felony but convicted of the compound felony, finding that the acquittal of one does not necessitate a determination that there was insufficient evidence of the other).[12]

█ Accordingly, despite the inconsistency of the verdicts, the question before this Court is whether a rational jury *could* have found Powell guilty beyond a reasonable doubt of using or possessing a dangerous weapon — which we find that it could. In pertinent part, section 2251(a)(2)(B) prohibits possession of a dangerous or deadly weapon "with the intent to use the same unlawfully against another," and provides a sentencing enhancement where the possessor "carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence."[13] Where, as in this case, the defendant has alleged self-defense, on review for sufficiency this Court will evaluate whether "the People presented sufficient evidence that a rational jury could conclude either (1) the right to self-defense never arose . . . or (2) the right to self-defense arose but the defendant used more force than necessary to defend himself." *Christopher v. People*, 57 V.I.

---

[12] The Court employed the rule gleaned from *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932), that a verdict cannot be attacked on the basis that it is inconsistent with the verdict on another count, as consistency is not required and "[e]ach count in an indictment is regarded as if it was a separate indictment." *Id.* at 393. However, the court in *Williams* in effect opined with regard to section 2251(a)(2)(B), that the *Dunn* rule is inapplicable to the extent the statute "requires a conviction for a predicate 'crime of violence' in order to impose [the enhanced] sentence." 23 V.I. at 128.

[13] Mayhem, first-degree assault, and third-degree assault are considered "crimes of violence" for purposes of section 2251(a)(2)(B). *See* 14 V.I.C. § 2253(d)(1); 23 V.I.C. § 451(e). Although the trial court instructed the jury that it must find Powell intended to use the weapon during the commission or attempted commission of a crime of violence as an element of the crime (J.A. 573), as this provision is a sentencing enhancement, the actual crime prohibited by section 2251(a) does not require such proof. *Rabess v. Gov't of the V.I.*, 868 F. Supp. 777, 30 V.I. 348, 356-57 (D.V.I. App. Div. 1994). Nonetheless, such sentencing enhancements must still be submitted to the jury, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Furthermore, Powell was ultimately not sentenced according the enhancement, as the trial court entered judgment under section 2251(a)(2)(A). Thus, for various reasons, although the instruction was plainly erroneous, it did not impact Powell's substantial rights or the fairness and integrity of the proceedings.

500, 515 (V.I. 2012) (citations omitted); *see Phipps*, 54 V.I. at 548-49 (noting that the People bear the burden of disproving self-defense beyond a reasonable doubt).

██ As a threshold matter, the parties do not dispute that Powell possessed a broken beer bottle, nor is it disputed that in context, the bottle was dangerous; rather, Powell disputes the finding that she intended to use the bottle "unlawfully." We hold that the evidence was sufficient for a rational jury to find such unlawful intent. There was testimony that following the initial altercation at the Rock, Powell and the three women were separated. (J.A. 217, 271.) Powell got into her vehicle, and instead of driving away, chose to drive the wrong direction through the First Bank drive-thru following the three women. (J.A. 284-85, 306.) There is testimony that Powell made threats about hurting the women while on the phone with the police, and the actual 9-1-1 recordings were played for the jury. (J.A. 177-78.) Finch testified that when he left Powell near First Bank and she was talking to the police, he believed that she "had her senses about her" and that "as long as she stayed were she was . . . it would be cool," indicating that the immediate threat had subsided. (J.A. 290.) Molyneaux also noted that while near First Bank, he believed Powell had walked away to calm down; he then heard a trash can turning over and heard glass breaking and saw Powell running toward Mojo's. (J.A. 166.) Ervin's and Maheu's testimony corroborated this account, as Ervin observed Powell stop at a trash can, and Maheu saw her walking with a broken bottle. (J.A. 253, 261.) Maria testified that as Powell approached them near Mojo's, she threatened them, saying "you all dead." (J.A. 119.) Further, Maria demonstrated for the jury how she attempted to block her face with her arm, and also showed the jury the injury to her arm. (J.A.126-27.) In light of this evidence, a rational jury could find that Powell searched for the bottle, broke it to create a sharp-edged weapon, approached the women near Mojo's with the intent to attack Maria, and was, therefore, the aggressor during the last altercation, not acting in self-defense.

While there is testimony that Maria swung first during this last altercation, Peter Burlingame, an expert on self-defense and the use of force, opined, notwithstanding, that in his professional opinion, Powell used excessive force against Maria. (J.A. 387.) He reasoned that Powell could have avoided the second situation because there was a "disconnect" — she was in her car, and was no longer facing an immediate,

unavoidable threat. (J.A. 382, 388.) Although Powell indicated that she obtained the bottle for self-defense and only used it after Pauline threw something sharp over Powell's head and Maria bent down to pick it up, there was also testimony that what Maria bent down to retrieve was sunglasses, and that after Powell cut Maria, she continued to go after Pauline. (J.A. 424-25.) Thus, alternatively, a rational jury could have concluded that the force Powell used was excessive and therefore still unlawful, despite having been intended as self-defense. Accordingly, there was sufficient evidence for a rational jury to convict Powell under section 2251(a).

██ Powell additionally argues that the jury had to have found no crime of violence by virtue of its "not guilty" verdicts on the counts charging mayhem, first-degree assault, and third-degree assault. Logically, Powell makes a valid argument — a rational jury could not have found insufficient evidence to convict on each crime of violence, yet simultaneously found Powell committed or attempted to commit these same crimes of violence for purposes of the weapons charges. However, as noted by the United States Supreme Court in *Powell*, each count is to be evaluated independently as though they are separate indictments, and the inconsistency of the verdicts cannot be the basis of finding insufficiency. 469 U.S. at 62, 67-68. Inconsistent verdicts by their very nature indicate that the jury has erred; however, as this Court has noted "[c]ourts should . . . 'not infer innocence' " as a result of this error. *People v. Thompson*, 57 V.I. 342, 350-51 (V.I. 2012) (quoting *United States v. Craig*, 358 Fed. Appx. 446, 451 n.5 (4th Cir. 2009)) (inconsistent verdicts should be upheld as long as a conviction is supported by sufficient evidence).

██ Importantly, despite the trial court's improper crime of violence instruction, whether there was sufficient evidence in the record to allow a jury to have found each crime of violence is not significant, because carrying or using a dangerous weapon during the commission or attempted commission of a crime of violence is not an element of the crime, but rather an element that the jury needed to find in order to warrant an enhanced sentence. *See Rabess v. Gov't of the V.I.*, 868 F. Supp. 777, 30 V.I. 348, 356-57 (D.V.I. App. Div. 1994); *Williams*, 23 V.I. at 131. Without the crimes of violence, there was still sufficient evidence of the actual elements constituting a violation of the prohibition against carrying or using a dangerous weapon to sustain a conviction. *See Gov't*

*of the V.I. v. Charles*, 590 F.2d 82, 85 (3d Cir. 1979) (upholding a conviction under section 2251(a)(2)(A) where defendant was not convicted of any crime of violence); *see also Williams*, 23 V.I. at 131 (same, noting a conviction of the crime of violence is required for sentencing under section 2251(a)(2)(B)); *Gov't of the V.I. v. Gonzalves*, 47 V.I. 149, 156-58 (V.I. Super. Ct. 2005) (same). Therefore, Powell was properly sentenced pursuant to subsection (a)(2)(A) of section 2251 rather than subsection (a)(2)(B) of that statute.[14]

## D. Section 104 Violation

 Despite the fact that the court correctly entered judgment under section 2251(a)(2)(A), we nevertheless remand this matter for resentencing because, although Powell used the bottle against both Maria and Robbins, section 2251(a) is not an assault provision — rather, the statute punishes the act of possession with unlawful intent. Absent the crimes of violence distinguishing the separate counts of possession (and separate victims), the conviction for multiple counts of possession pertaining to the same weapon during the same event violates section 104.[15] *See* 14 V.I.C. § 104.

## E. Impeachment with Prior Conviction

 Powell argues that the court's failure to conduct a balancing test under Rule 609 of the Federal Rules of Evidence[16] prior to allowing the People to impeach her with a prior conviction for assault in the third

---

[14] Notably, section 2251(a)(2)(B) also provides that a previous felony conviction can serve as a sentence-enhancing factor. Powell was previously convicted for third-degree assault; thus, had the People submitted this factor as a basis for enhancing Powell's sentence, the court could have still entered judgment under subsection 2251(a)(2)(B).

[15] In *People v. Masters*, 195 Cal. App. 3d 1124, 241 Cal. Rptr. 511, 513 (1987), the court indicated in interpreting its provision against multiple punishments, after which section 104 of the Virgin Islands Code was modeled, that "[a]s long as each violent crime involves at least one different victim" the prohibition is inapplicable. In this case, Maria and Robbins were collectively the "victims" of Powell's possession, and were only distinct victims of the "crimes of violence." Further, Powell could only be found to have intended to use the bottle unlawfully against the women. There is no evidence that Powell ever intended to use the bottle unlawfully against Robbins, and the jury was only instructed on transferred intent as it related to the third-degree assault charge.

[16] The Federal Rules of Evidence were made applicable to the Virgin Islands in 2010 through Act No. 7161, section 15, of the Virgin Islands Legislature. *See Phipps*, 54 V.I. at 567 n.10.

degree deprived her of a fair trial, because the similarity between the prior conviction and the crime she was on trial for at the time made use of the prior conviction highly prejudicial. Nonetheless, Powell did not object to the use of the prior conviction at trial. Pursuant to Rule 609, a felony conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs the prejudicial effect to that defendant." FED. R. EVID. 609(a)(1)(B). Due to the special risk of prejudice a testifying defendant faces when a prior conviction is used for impeachment, the rule "requires that the government show that the probative value of the conviction[] as impeachment evidence outweighs [its] prejudicial effect." FED. R. EVID. 609 advisory committee's notes on 1990 amendments to the Rule; *see Gov't of the V.I. v. Bedford*, 671 F.2d 758, 761, 19 V.I. 641 (3d Cir. 1982) ("Rule 609(a)(1) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant."). Moreover, where the prior conviction is for a crime similar to the crime the defendant is presently on trial for, the need for careful balancing increases. *See United States v. Seamster*, 568 F.2d 188, 191 (10th Cir. 1978) (prior convictions for crimes that are identical or similar "should be carefully scrutinized"); *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir. 1977) ("When the prior conviction and the charged act are of a similar nature, the danger [of unfair prejudice] increases."); *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) (same). *But see United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977) (noting that similar convictions, though requiring greater scrutiny, must not necessarily be excluded).

▮ The record in this case does not show that any balancing test was conducted prior to the use of the prior conviction to impeach Powell. Rather, as the first question to Powell on cross-examination, the People simply stated, "[f]irst off, we are aware of the charges here, you have been previously convicted of third degree assault; is that correct?" (J.A. 478.) In response to Powell's indication that the conviction was 15 years ago, the People stated "you were convicted in 2002 and sentence[d] to a period of two years in prison[,]" and Powell acknowledged that she was. (*Id.*) Although Powell's trial counsel did not object, and the court does not appear to have been implored to exercise its discretion as to the admissibility of the conviction on the record, it can be presumed that the

failure to conduct a balancing inquiry, especially in light of the nature of the crime, constituted error that was plain. *See Francis v. People*, 52 V.I. 381, 390-91 (V.I. 2009) ("[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." (internal quotation marks and citations omitted)).

However, considering the totality of the evidence and the outcome of the case, Powell's substantial rights were not affected, as she does not appear to have suffered prejudice. Powell's basic contention at trial was that she was acting in self-defense. Accordingly, her credibility was important. However, other than the portions of her testimony where she claimed that Maria and Seybold fought her again in the drive-thru and that Robbins was injured first, Powell's testimony was highly corroborated. Several witnesses indicated that the three women were the aggressors in the initial altercation at the Rock, that Maria threw a bottle at Powell first, that the women taunted Powell from the parking lot, and that Maria swung first when Powell confronted them near Mojo's. While on one hand, this lessens the need for the People to have impeached her credibility, it also increases the likelihood that the attempt had less significance. Moreover, the court instructed the jury that it was to consider the evidence regarding Powell's prior conviction for impeachment purposes only, albeit only during the final instructions. (J.A. 563-64.) Perhaps most importantly, the jury found Powell "not guilty" on the charges of mayhem, first-degree assault, and third-degree assault. Hence, it does not appear that the jury used the prior conviction evidence improperly against Powell as propensity evidence. As a result, this Court need not consider whether the fairness and integrity of the proceedings were seriously affected. We reject Powell's contentions and find the trial court did not commit reversible error in this regard.

## F. Rule 403 Balancing Issue

Powell asserts that she was unduly prejudiced by the admission of exhibits 6, 7, 9, 10, 18, 19, 20, 21, 22, and 26, photographs of the injuries and crime scene, along with the testimony of Officers Lindquist and Esprit concerning the ambulance's failure to arrive. (Appellant's Br. 29-30.)

Notably, Powell raises this argument for the first time on appeal, thus we review for plain error. *Phipps*, 54 V.I. at 546. Rule 403 of the Federal Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Powell relies on *State v. Bocharski*, 200 Ariz. 50, 22 P.3d 43, 48-49 (2001), for the proposition that the probative value of evidence is minimal where the fact it goes to prove is not contested, and implores this Court that careful consideration should be given where a photo "is of a nature to incite passion or inflame the jury." Powell argues that the exhibits in question were gruesome and encouraged the jury to convict on that basis, rather than establishing any element in issue. We reject this argument.

 "[J]udicial restraint is . . . desirable" when reviewing a trial court's ruling under Rule 403. *Francis v. People*, 56 V.I. 370, 385-86 (V.I. 2012); *see also United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("[T]he application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."). In *Government of the Virgin Islands v. Huggins*, 193 Fed. Appx. 117, 118 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit, faced with a similar argument, upheld the admission of a photo showing a laceration and blood on the victim's face, finding it was the only evidence beyond testimony that showed the nature and extent of the victim's wounds. *See also United States v. Lopez*, 271 F.3d 472, 482, 44 V.I. 311 (3d Cir. 2001) (finding a photo of victim's maimed hand was the best evidence to show she was seriously disfigured); *United States v. Whitfield*, 715 F.2d 145, 147 (4th Cir. 1983) (finding no abuse of discretion where gruesome photos admitted despite possibility that appellant could have been convicted without them); *United States v. Bowers*, 660 F.2d 527, 529-30 (5th Cir. 1981) (finding potential prejudice created by a color photo of a child's "lacerated" heart did not outweigh its probative value as to excessive force); *United States v. Castillo*, 615 F.2d 878, 886 (9th Cir. 1980) (close-up photos of stab wounds relevant to self-defense); *Commonwealth v. Thomas*, 279 Va. 131, 688 S.E.2d 220, 242-43 (2010) (crime scene photos depicting victim's injuries, while "graphic and gruesome . . . demonstrated both the method and violence of the crime" and were therefore deemed more probative than prejudicial); *Burgess v.*

*State*, 723 So.2d 742, 764 (Ala. 1998) (gruesome photos of crime scene admissible); *State v. Flores*, 1998 MT 328, 292 Mont. 255, 974 P.2d 124, 127 (1998) (photos depicting large gash and exposed tissue and bone relevant to show the position of victim's arm when cut in light of defendant's claim of self-defense and victim's assertion that he had raised his arm to block defendant's attack; also relevant to help jury determine whether reasonable force was used); *Burrell v. State*, 701 N.E.2d 582, 584 (Ind. Ct. App. 1998) (photo depicting child sexual assault victim's injury was probative as to the severity of the injury, and could not be assumed to have inflamed the jury any more than the other evidence); *State v. Bivens*, 967 S.W.2d 821, 824 (Tenn. Crim. App. 1996) (crime scene photos relevant to rebut claims of provocation and self-defense).

Similar to the dispositions in these cited cases, this Court concludes that while the photos were certainly inflammatory and prejudicial, they were probative on material issues in Powell's case. As in *Flores*, Maria testified that she raised her arm to block Powell's attack — exhibit 7 depicts Maria's arm and is relevant to proving its position when cut. Moreover, the exhibits are relevant to the nature and extent of the injuries, and to a determination of whether reasonable force was used as emphasized in *Huggins*, *Lopez*, *Bowers*, *Castillo*, and *Burgess*. In addition, the exhibits were demonstrative of both the method and violence of the crimes with which Powell was charged.

Considering the other testimony on record, it also cannot be presumed that this probative value was substantially outweighed by the danger of unfair prejudice or presentation of cumulative evidence, nor was the trial court required to exclude the evidence on the basis that there was other testimony or methods of proving the facts. *See, e.g., Whitfield*, 715 F.2d at 147-48. Powell did not object to the evidence at trial, and even stipulated to the admission of what are arguably the more gruesome of the photos. *See, e.g., Potter*, 56 V.I. at 793 (" 'Generally, trial error which is induced, encouraged, acquiesced in, or consented to by defense counsel does not form a basis for reversal on appeal.' " (quoting *State v. Chaparro*, No. A-6255-03T4, 2006 N.J. Super. Unpub. LEXIS 54, at *15 (N.J. Super. Ct. April 10, 2006))); *United States v. Gwaltney*, 790 F.2d 1378, 1386 (9th Cir. 1986) (noting that where the defendant stipulated to the admission of evidence he could not then argue it was unduly prejudicial); *cf. Najawicz v. People*, 58 V.I. 315, 326 (V.I. 2013)

(discussing a defendant's consent and waiver). Accordingly, this Court finds the trial court did not err in applying Rule 403 to allow the exhibits.

█ Nor does this Court find that the trial court committed reversible error by permitting the contested portions of the testimony of Officer Esprit and Officer Lindquist. While the discussion concerning the failure of the ambulance to arrive and the fact that Maria had to eventually be transported in another's personal vehicle was minimally relevant to proving the offenses charged, if at all, in light of the other testimony in the case concerning Maria's injury, there is no indication that it was particularly prejudicial, especially considering that the testimony may have even been construed to shift the blame for the extent of the injury away from Powell.

## III. CONCLUSION

This Court affirms the Judgment and Commitment of the Superior Court. Although trial counsel's stipulation to the admission of several gruesome and graphic photos, and failure to object to the admission of others and minimally relevant testimony, may have been erroneous, it is unlikely that counsel's actions so prejudiced Powell as to render her trial unreliable. This is especially true in light of the fact that, were trial counsel to have objected on the basis that the evidence was unduly prejudicial, it is likely that such objection would have been overruled considering the probative value of the evidence. There was also sufficient evidence to support Powell's conviction under section 2251(a), despite the jury's finding that Powell was not guilty of the predicate crimes of violence originally charged, as in context, the crimes of violence were merely sentencing enhancements. Although the trial court erred in failing to conduct a balancing test under Rule 609 prior to allowing Powell to be impeached with her prior conviction for third-degree assault, trial counsel made no objection, Powell's testimony was largely corroborated, and she was found not guilty of third-degree assault, all of which suggests that her substantial rights were not affected. Nonetheless, as section 2251(a) prohibits possession of a dangerous weapon with the intent to use it unlawfully, rather than any actual assault, this Court remands this matter for resentencing on a single count under section 2251(a)(2)(A).